**JAKUB P. MEDRALA, ESQ.**
California Bar No. 280273
**The Medrala Law Firm, Prof. LLC**
615 S. 6th Street
Las Vegas, Nevada 89101
(702) 475-8884
(702) 938-8625 Facsimile
jmedrala@medralaw.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN BRANDON BILZERIAN, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>IGNITE INTERNATIONAL BRANDS, LTD., a Foreign Corporation; IGNITE INTERNATIONAL, LTD., a Foreign Corporation; PAUL BILZERIAN, an Individual; SCOTT ROHLEDER, an Individual; RUPY DHADWAR, an Individual,<br><br>Defendants. | Case No.: 2:25-cv-8882<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED**<br><br>***ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF*** |

Plaintiff DAN BRANDON BILZERIAN ("Plaintiff" or "Dan") complains against Defendants IGNITE INTERNATIONAL BRANDS, LTD., IGNITE INTERNATIONAL, LTD., PAUL BILZERIAN, SCOTT ROHLEDER, and RUPY DHADWAR (collectively "Defendants") as follows:

**I.**

**NATURE OF THE ACTION**

This action has its remote origin in a dispute between the Plaintiff Dan Bilzerian and Defendants Paul Bilzerian ("Paul"), Scott Rohleder ("Rohleder"), and Rupy Dhadwar

1
Complaint

("Dhadwar") over control of Ignite International Brands, Ltd. ("Ignite"); Plaintiff's unlawful removal from Ignite, which was orchestrated by Paul, Rohleder, and Dhadwar; and the ultimate subsequent unlawful use of Plaintiff's name and likeness by the individual Defendants and the companies they control.

Plaintiff Bilzerian ("Dan") is the founder of Defendant Ignite and the majority shareholder who was unlawfully pushed out of Ignite through a series of unlawful acts orchestrated by Paul and executed by Rohleder and Dhadwar.

Paul and Rohleder are criminals who were recently indicted (together with Ignite) by the United States of America in the U.S. District Court for the Central District of California (Case No. 2:24-cr-00569). Dhadwar is Ignite's purported CEO; however, his main role at Ignite consists of executing orders from Paul and Rohleder.

Despite the Plaintiff's removal from Ignite, Defendants continued to use and exploit Dan's recognizable likeness for their own benefit while tarnishing his name and reputation on the backdrop of their criminal acts.

## II.

## JURISDICTION AND VENUE

1. The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). This is a civil action arising under federal law, the Lanham Act of 1946 as amended (codified at 15 U.S.C. §§ 1051, et seq.). The pendent state law claims are so related to the federal claims that they form part of the same case or controversy pursuant to Article III of the United States Constitution.

2. The Court therefore has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) for several independent reasons, including that Defendant Ignite International Brands, Ltd. "resides" in this judicial district for venue purposes under 28 U.S.C. § 1391(c)(2) and a substantial part of the events or omissions giving rise to the claims occurred in this district.

4. Additionally, jurisdiction in this case is based on diversity of citizenship of the parties and the amount in controversy. Plaintiff is a resident of Nevada, and several Defendants are foreign corporations and residents of foreign states and countries.

5. The amount in controversy exceeds the sum $75,000, exclusive of interest and cost.

6. This Court has personal jurisdiction over Defendants because they purposefully directed their unlawful activities towards California, and they purposefully availed themselves of doing business in California.

7. Among others, the Defendants unlawfully use the Plaintiff's name and likeness to sell their nicotine products in California through a network of smoke shops and other retailers physically located in California; they unlawfully use the Plaintiff's name and likeness to advertise their products through use of social media companies located in California, such as Instagram, Facebook, and Twitter, as well as Internet providers located in California; and many of the marketing materials that are being unlawfully used by the Defendants were physically created in California.

8. In addition, Defendant Ignite is domiciled in California, and at least one of its officers physically resides in California.

/ / /

/ / /

/ / /

/ / /

## III.

## **PARTIES**

9. Plaintiff Dan is a resident of Nevada. Plaintiff is a world-famous professional poker player and social media influencer who gained fame for portraying a distinct, extravagant lifestyle, as well as founding Ignite. He is the son of Defendant Paul.

10. Defendant Ignite International Brands, Ltd. ("Ignite"), is a Canadian corporation with a principal place of business in the State of Texas and domiciled in California. Ignite sells electronic cigarettes, apparel, alcohol, water bottles, and other brand products.

11. Defendant Ignite International, Ltd. ("Ignite US"), is a Wyoming corporation domiciled in California and Texas, and it is a wholly owned subsidiary of Ignite. Upon information and belief, Ignite US, together with Ignite, markets Ignite's products and is a licensor of Ignite's intellectual property rights.

12. Defendant Paul Bilzerian ("Paul") is a resident of St. Kitts and Nevis, and he was previously an American businessman and corporate raider. In 1989, Paul was convicted of securities fraud in the U.S. District Court for the Southern District of New York and sentenced to prison.

13. In 1993, the United States Securities and Exchange Commission ("SEC") obtained civil judgments against Defendant Paul for his fraudulent activities. Upon information and belief, Paul controls some of Ignite's shareholders, including International Investments, Ltd. ("International Investments").

14. Defendant Rohleder is a resident of Florida. He is Paul's "right-hand" and a proxy in the United States, as well as his *de facto* business partner. At various times, Rohleder served as a CEO of Ignite. Rohleder acts at the direction and for the benefit of Paul.

15. Paul, Rohleder, and Ignite were recently indicted by the United States of America in this Court for their role in a conspiracy to defraud the United States, wire fraud, and securities fraud, to name a few.

16. Defendant Dhadwar is a citizen of Canada. He is the purported CEO of Ignite and a puppet of Rohleder and Paul. At all times relevant here, he acted at the direction and for the benefit of Paul and Rohleder, while allowing Ignite to be used of such purpose.

17. Dhadwar, Rohleder, and Paul use Ignite as a vehicle to personally and unlawfully benefit from Ignite's operations through use of fake titles such as "consultant" and "executive," among others, while unlawfully diverting money to themselves from Ignite and using Ignite's resources to personally benefit themselves at the expense of Ignite's shareholders, including Dan.

## IV.

## **GENERAL ALLEGATIONS**

18. Plaintiff Dan is an internationally known poker player, businessman, and a social media influencer. He gained international fame for portraying a distinct, extravagant lifestyle, as well as founding Ignite. He is regularly offered from hundreds of thousands to millions of dollars to promote lifestyle brands and makes a large part of his income from utilizing his public image.

19. In 2017, Dan founded Ignite. Ignite is a lifestyle brand selling disposable vapes, spirits, and apparel. While not directly involved in Ignite's operations, Dan's name, likeness, and personality became the essence of Ignite's brand, including all of the social media and other advertising and promotion.

20. Until December 2023, Dan served as the nominal CEO of Ignite. However, he was not directly involved in Ignite's operations and had a dispute with other Ignite shareholders—who later turned out to be Paul's agents—over the course of Ignite's business, the quality of Ignite's products, and Ignite's leadership. In essence, Dan complained about the mismanagement

of Ignite and Rohleder's and Paul's behind-the-scenes acts that caused harm to Ignite's business.

21. During the same time, he was threatened by Rohleder and Paul's other agents that he would be fired from the position of Ignite's CEO.

22. In response, on December 18, 2023, Dan expressly advised the then-board of directors of Ignite that if they fired him as the CEO of Ignite, they would "lose the multimillion-dollar benefit of [his] social media posting" and "lose the rights to use [his] name and likeness."

23. Despite this, on December 21, 2023, Ignite's board of directors, which was controlled by Rohleder and Paul, terminated Dan as the CEO of Ignite. At the board meeting where this occurred, Dan again told the board that Ignite had no right to use his name, likeness, and image.

24. In June 2024, Rohleder and Paul took things even further. On June 2, 2024, they purported to remove Dan from the position of chairman of the board with Ignite and unilaterally and unlawfully seized control of Ignite's operations. This was done without the necessary 67% shareholder vote to remove a director.

25. Despite this, Ignite and the remaining Defendants continued to use Dan's name, image, and likeness, as well as his trademarks without his permission and without providing him with any compensation.

26. Among other things, the Defendants, without Dan's consent:

- Kept his name and image on numerous Ignite websites within their control, making him a central component of the Ignite brand, despite not compensating him for this and unlawfully removing him from Ignite;

- Crated social media accounts (which the Defendants, and not Dan, control) and posted and pinned Dan's name, likeness, and image in various "stories" on those accounts;

6
Complaint

- Used Dan's name and image to promote sales of vapes, alcohol, clothing, and other products;

- Used photographs personally taken by Dan on social media accounts;

- Used actors resembling Dan to promote their products; and

- Unlawfully used Dan's personal social media accounts to advertise their product without Dan's consent.

27. Moreover, because of Rohleder's and Paul's criminal acts, on September 26, 2024, Ignite, Paul, and Rohleder were indicted by the United States of America in this Court (Case No. 2:24-cr-00569).

28. In addition, on September 27, 2024, Ignite, Paul, Rohleder, and its proxies Paul Dowdall, John Schaefer, and International Investment, were sued by the SEC in the United States District Court for the Southern District of New York (Case No. 1:24-cv-07331).

29. The indictment and the SEC lawsuit received extensive media coverage throughout the United States and the world.

30. This coverage, despite the lack of Dan's involvement in any criminal activities perpetuated by Rohleder, Paul, and their proxies, brought Dan negative press specifically because of his affinity with Ignite's brand and his continued presence on Ignite's websites, social media, and marketing materials.

31. After the indictment, Rohleder resigned from the purported position of Ignite's CEO and appointed to this position his and Paul's puppet, Dhadwar, whose actions remain fully and illegally controlled by Rohleder and Paul.

32. Due to Ignite's continuing refusal to cease from using Dan's name and likeness, among other things, on November 4, 2024, through his counsel, Dan again demanded that Ignite cease and desist from using his name and likeness and otherwise exploiting his intellectual

property rights, to no avail.

33. Dhadwar, now the purported CEO of Ignite, decided, at Paul's and Rohleder's insistence, to continue to unlawfully exploit Dan's name and likeness and refused to remove it from Ignite's marketing materials.

34. Moreover, because of his unlawful removal from Ignite, Dan decided to pursue alternative business opportunities, which included, among other things, selling lifestyle products under his own, separate brands.

35. In response, Ignite, Paul, Rohleder, and Dhadwar engaged in a smear campaign against Dan in which they represented, and continue to represent, to potential suppliers and distributors of Dan's companies that Dan is legally prevented from competing in any way with Ignite's business.

36. Ignite, Paul, Rohleder, and Dhadwar have falsely represented to Dan's potential suppliers and distributors that Dan is allegedly subject to a noncompete agreement with Ignite that prevents him from conducting any business that is similar to Ignite's business.

37. These representations are utterly false and their sole aim is to discourage anyone from working with Dan or his entities and to prevent Dan from seizing any business opportunities outside of Ignite.

V.

**FIRST CLAIM FOR RELIEF—VIOLATION OF CAL. CIV. CODE § 3344**

38. Plaintiff repeats and incorporates the allegations above as fully set forth herein.

39. Plaintiff is a universally known and highly recognizable personality who has received widespread recognition for his distinct lifestyle and social media presence that has been viewed by tens of millions of people throughout the United States and all over the world.

40. Through his hard work and use of his talents in the field of entertainment, Dan's

likeness and persona have become very valuable and are invested with substantial goodwill in the eyes of the public. Accordingly, Dan licenses the right to use of his name and likeness for use in the United States and throughout the world—a property right with substantial commercial value—which he does not agree to transfer, in whole or in part, to Defendants for any purposes.

41. Defendants have willfully and without authorization used Dan's name, image, likeness, and persona for commercial purposes, to advertise and sell nicotine products, alcohol, and apparel, among others.

42. Defendants' unauthorized use of Dan's name, image, likeness, and persona constitute a commercial misappropriation in violation of Section 3344 of the California Civil Code.

43. As a direct and proximate result of Defendants' wrongful conduct, Dan has suffered, and will continue to suffer, damages in an amount to be proven at trial.

44. Defendants have further been unjustly enriched by their misappropriation of Dan's statutory right of publicity.

45. Accordingly, Dan is entitled to restitution of all income, profits, and other benefits resulting from Defendants' conduct, in an amount to be determined according to proof at trial.

46. Defendants' actions as alleged herein were malicious, oppressive, fraudulent, and done with the intent to injure Dan and with a willful and conscious disregard for Dan's rights. As a result, Dan is entitled to recover from Defendants punitive and exemplary damages in an amount sufficient to punish and deter them and others from engaging in such acts in the future.

47. Unless temporarily, preliminarily, and permanently enjoined and restrained by order of this Court, Defendants' continued acts will cause Dan severe and irreparable injury, which cannot adequately be compensated by monetary damages.

48. By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief, enjoining the further commercial exploitation of his name, image, likeness, and persona by any of the Defendants, including but not limited to an injunction against any further broadcast, exploitation, or use of Dan's name, likeness, persona, or pictures.

## VI.

## SECOND CLAIM FOR RELIEF—VIOLATION OF COMMON LAW RIGHT OF PUBLICITY

49. Plaintiff repeats and incorporates the allegations above as fully set forth herein.

50. Dan is the owner of the common law rights of publicity in his name, image, likeness, and persona.

51. Defendants have willfully and without authorization used Dan's name, image, likeness, and persona for commercial purposes, to advertise and promote the sale of nicotine, alcohol, and other products.

52. Defendants' unauthorized use of Dan's name, image, likeness, and persona constitutes a violation of California's common law right of publicity.

53. As a direct and proximate result of Defendants' wrongful conduct, Dan has suffered, and will continue to suffer, damages in an amount to be proven at trial.

54. Defendants have further been unjustly enriched by their infringement of Dan's common law right of publicity. Accordingly, Dan is entitled to restitution of all income, profits, and other benefits resulting from Defendants' conduct in an amount to be determined according to proof at trial.

55. Defendants' actions as alleged above were malicious, oppressive, fraudulent, and done with the intent to injure Plaintiff and with a willful and conscious disregard for Dan's rights. As a result, Dan is entitled to recover from Defendants punitive and exemplary damages in an

amount sufficient to punish and deter Defendants and others from engaging in such acts in the future.

## VII.

## THIRD CLAIM FOR RELIEF—FALSE ENDORSEMENT, VIOLATION OF 15 U.S.C. § 1125(a) (LANHAM ACT)

56. Plaintiff repeats and incorporates the allegations above as fully set forth herein.

57. Dan is the owner of the statutory and common law rights associated with his name, image, likeness, and persona necessary for endorsement, including Dan's right to decide whether to associate his name, image, likeness, or persona with any third party for purposes relating to sponsorship and/or endorsement.

58. Defendants used distinctive attributes of Dan's persona, including his name, image, and likeness without permission by posting online images of Dan promoting Ignite's products and expressly endorsing them without his consent.

59. Defendants' unauthorized uses constitute false or misleading representations of fact to falsely imply the endorsement of Defendants' businesses and products by Dan.

60. Defendants' unauthorized uses of Dan's persona are likely to confuse and deceive consumers as to Dan's sponsorship and/or endorsement of Ignite's products. Specifically, Defendants' use of Dan's name, image, and likeness is likely to cause consumers, and has caused consumers, to mistakenly believe that Dan is still associated with Ignite's products advertised and sold by Defendants, or that he sponsors or endorses those products.

61. As a direct and proximate result of the acts of false endorsement set forth above, Dan has suffered actual damages in an amount to be proven at trial

62. Dan is entitled to the full range of relief available under the Lanham Act, 15 U.S.C. § 1117, including, without limitation, an award of actual damages and the disgorgement of Defendants' profits arising from their false or misleading acts.

63. Defendants' conduct further renders this an "exceptional" case within the meaning of the Lanham Act, thus entitling Dan to an award of attorney fees and costs.

64. Defendants committed the unauthorized acts described above knowing that they are likely to cause consumers to falsely believe that Dan endorses products advertised and sold by Defendants. Defendants have thus willfully, knowingly, and maliciously deceived and confused the relevant consuming public, such that Dan is entitled to an award of treble damages.

## VIII.

## FOURTH CLAIM FOR RELIEF—COMMON LAW TRADEMARK INFRINGEMEMNT

65. Plaintiff repeats and incorporates the allegations above as fully set forth herein.

66. Dan owns valid common law trademarks in DAN BILZERIAN for use in connection with the promotion of products and services in the entertainment industry.

67. The public has come to recognize the DAN BILZERIAN trademark as exclusively identifying Dan, and the trademark is famous worldwide.

68. Defendants have infringed upon Dan's trademark by using the trademark on the Internet, including using Dan's name, likeness, and persona to promote and sell Ignite's products.

69. Defendants' unauthorized use of Dan's trademark is likely to confuse and deceive consumers as to the origin, sponsorship, and/or endorsement of Defendants' brands and products. Specifically, Defendants' use of Dan's trademark is likely to cause consumers to mistakenly believe that Dan is associated with Defendants and/or that he sponsors or endorses products advertised and sold by Defendants.

70. As a direct and proximate result of the acts of trademark infringement set forth above, Dan has suffered actual damages in an amount to be proven at trial.

71. Defendants acted with fraud, oppression, or malice in infringing Dan's trademark as alleged above. As such, in addition to the other relief sought herein, Dan is entitled to an award of punitive damages.

IX.

### SIXTH CLAIM FOR RELIEF—UNJUST ENRICHMENT

72. Plaintiff repeats and incorporates the allegations above as fully set forth herein.

73. As a result of the wrongful acts and conduct of Defendants, and each of them, as alleged above, Defendants have been unjustly enriched and should be required and ordered to disgorge to Plaintiff all of the revenues and profits received by each of the Defendants as a direct or indirect result of Defendants' wrongful conduct.

X.

### SEVENTH CLAIM FOR RELIEF—INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

74. Plaintiff repeats and incorporates the allegations above as fully set forth herein.

75. When the Defendants learned that the Plaintiff launched separate brands and business ventures from Ignite, they engaged in a campaign aimed at disrupting Dan's relationships with suppliers and distributors by misrepresenting to them that neither Dan nor his business ventures can enter into any business relationships with such distributors or suppliers because of Dan's alleged noncompete agreement with Ignite.

76. The Defendants specifically stated to such suppliers and distributors that Dan cannot produce or sell any products or services that compete in any way with Ignite, and they threatened that anyone who facilitates such competing ventures will be sued by Ignite.

77. Ignite specifically represents to the public that Dan is prevented from competing with it in any way, shape, or form.

78. The Defendants made such false representations with the intent to harm Dan and prevent him from entering into any business relationships with suppliers or distributors of his products.

79. Through their wrongful conduct as alleged above, Defendants have damaged Plaintiff's prospective business relationships and caused irreparable injury to the Plaintiff.

80. Plaintiff is entitled to a preliminary and permanent injunction issued against Defendants, and each of them, to enjoin and prohibit any continued representations to anyone that Dan cannot compete with Ignite's business.

81. As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each of them, Plaintiff has been damaged in an amount that is not yet fully ascertainable but which is in excess of of $75,000.

82. Plaintiff is informed and believes and thereon alleges that the wrongful conduct of Defendants, and each of them, was fraudulent, oppressive, malicious, and done with conscious disregard for the rights of Plaintiff. Therefore, Plaintiff is entitled to recover from Defendants, and each of them, exemplary and punitive damages.

## XI.

## **EIGHTH CLAIM FOR RELIEF—DECLARATORY RELIEF**

83. Plaintiff repeats and incorporates the allegations above as fully set forth herein.

84. Despite the lack of any enforceable noncompete agreement, or other legal mandate, Defendants contest and publicly misrepresent that Dan is prevented from conducting any business activities that compete with Ignite's business.

85. As a result, Plaintiff is entitled to a declaration by this Court, in accordance with 28 U.S.C. §§ 2201 *et seq.*, and other applicable law, that Dan is not prevented from conducting any business activities that compete with Ignite's or other businesses of the Defendants.

## XII.

## NINTH CLAIM FOR RELIEF—CIVIL CONSPIRACY

86. Plaintiff repeats and incorporates the allegations above as fully set forth herein.

87. As alleged above, the Defendants Paul, Rohleder and Dhadwar, by acting in concert, have conspired in order to violate the Plaintiff's statutory, and common-law rights. This conduct included, but was not limited to, conspiring to unlawfully use the Plaintiff's name, likeness, public persona, and trademark to sell Ignite's products without Dan's consent, and to unlawfully prevent him from competing with the Defendants.

88. The Defendants and their actions collectively, and/or in concert, have caused the Plaintiff damages in excess of $75,000.

89. In taking the aforementioned actions, the Defendants acted intentionally, maliciously, and oppressively, and Plaintiff is therefore entitled to recover exemplary or punitive damages from the Defendants.

## XIII.

## JURY DEMAND

90. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues raised in this action.

**WHEREFORE**, the Plaintiff prays that this Court enter a judgment:

1. Awarding Plaintiff injunctive relief banning Defendants' continued infringement of the Plaintiff's right of publicity and trademarks;

2. Awarding Plaintiff injunctive relief banning Defendants' continued interference with the Plaintiff's prospective economic advantage;

3. Awarding Plaintiff economic damages in excess of $75,000, the exact amount to be determined at trial;

4. Awarding Plaintiff noneconomic damages in excess of $75,000, the exact amount to be determined at trial;

5. Awarding Plaintiff treble damages;

6. Awarding Plaintiff exemplary or punitive damages;

7. Awarding Plaintiff prejudgment and postjudgment interest;

8. Awarding Plaintiff reasonable attorney fees and costs incurred in the prosecution of this action;

9. Awarding Plaintiff a declaratory judgment finding that he is not prevented from competing with Ignite or any of the other Defendants; and

10. Granting such other relief as the Court may deem just and proper.

DATED this 17th day of September, 2025.

**THE MEDRALA LAW FIRM, PLLC**

/s/ Jakub P. Medrala

_____

**JAKUB P. MEDRALA, ESQ.**
California Bar No. 280273
615 S. 6th Street
Las Vegas, Nevada 89101
*Attorney for Plaintiff, Dan B. Bilzerian*