# EXHIBIT 4

# February 27, 2025 Affidavit of Marc Randazza, Esq.

*Force filed*

Vancouver

28-Feb-25

REGISTRY

This is the 1st Affidavit
of Marc John Randazza and was made
in this case on February 27, 2025

No. S-245663
Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

Between

DAN BRANDON BILZERIAN also known as DAN BILZERIAN

Petitioner

and

IGNITE INTERNATIONAL BRANDS LTD., INTERNATIONAL INVESTMENTS
LTD., GREGORY GILPIN-PAYNE, SCOTT ROHLEDER, ROBIN RODRIGUEZ,
THOMAS BUNKER, and RALPH GILPIN-PAYNE

Respondents

## AFFIDAVIT

I, **MARC JOHN RANDAZZA**, Managing Partner of Randazza Legal Group, PLLC, of
4974 S. Rainbow Blvd., Suite 101, Las Vegas, Nevada, 89118, United States, AFFIRM AND SAY
THAT:

1.     I am an Attorney licensed to practice before the states of Massachusetts, Florida,
Nevada, Arizona, and California, and, as such, have personal knowledge of the facts and matters
stated herein, unless such facts and matters are stated to be based on information and belief, in
which case I believe them to be true.

//

//

//

2.      Attached as **Exhibit "A"** to this affidavit is a true copy of a report authored by me,

dated February 27, 2025.


SWORN OR AFFIRMED BEFORE ME                    )
 at _____(City), _____(State) on February   )
_____, 2025                                    )
                                                )
                                                )
                                                )

_____          _____
Commissioner /Notary                        **MARC JOHN RANDAZZA**


SEE ATTACHED
NOTARY CERTIFICATE

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Santa Clara -------

Subscribed and sworn to (or affirmed) before me on this 27 day of February_____, 20 25 , by Marc John Randazza————————

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.



JUSTIN BE
COMM. #2373937
NOTARY PUBLIC · CALIFORNIA
SANTA CLARA COUNTY
My Comm. Exp. Sept. 23, 2025

(Seal)                              Signature

This is **Exhibit "A"** referred to in the affidavit of Marc John Randazza affirmed before me on February _____, 2025 at _____(city), _____(state)

_____
A commissioner/notary in the State of _____ (state)

SEE ATTACHED
NOTARY CERTIFICATE

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Santa Clara_ -------

Subscribed and sworn to (or affirmed) before me on this _27_ day of _February_ , 20_25_, by _Marc John Randazza_ ,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.



JUSTIN BE
COMM. #2373937
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Exp. Sept. 23, 2025

(Seal)                    Signature _____

# RANDAZZA
## LEGAL GROUP

## EXPERT WITNESS REPORT

No. S-245663
Vancouver Registry

IN THE SUPREME COURT OF BRITISH COLUMBIA

between

DAN BRANDON BILZERIAN also known as DAN BILZERIAN

Petitioner

and

IGNITE INTERNATIONAL BRANDS LTD., INTERNATIONAL INVESTMENTS LTD., GREGORY GILPIN-PAYNE, SCOTT ROHLEDER, ROBIN RODRIGUEZ, THOMAS BUNKER, and RALPH GILPIN-PAYNE

Respondents

Submitted by:

Marc J. Randazza, JD, MAMC, LLM

Randazza Legal Group, PLLC

Date of Report:

February 27, 2025

27 Feb 2025

## TABLE OF CONTENTS

BACKGROUND AND QUALIFICATIONS……………………………………………… 1

OVERVIEW……………………………………………………………………………… 1

OPINIONS…………………………………………………………………………………2

RESEARCH CONDUCTED……………………………………………………………9

INDEPENDENCE, DUTY, CERTIFICATIONS AND QUALIFICATIONS………………… 10

APPENDIX A – CURRICULUM VITAE OF MARC J. RANDAZZA………………………. A-1

APPENDIX B – SOURCES OF INFORMATION & RESEARCH RELIED UPON………….B-1

**BACKGROUND AND QUALIFICATIONS**

1.      My name is Marc John Randazza. I am the managing partner of Randazza Legal Group, PLLC, 4974 S. Rainbow Blvd., Suite 100, Las Vegas, Nevada 89118; email: mjr@randazza.com. I am an expert in freedom of expression, intellectual property, and internet law.

2.      I have practiced in the area of internet law and intellectual property law for 25 years. I was a former professor of law at Barry University School of Law, I am a lecturer on intellectual property and internet law issues at the Università degli Studi di Torino, have a Law Degree from Georgetown University, a Masters in Mass Communication from the University of Florida, a Bachelors Degree in Journalism from the University of Massachusetts, and an LLM in international intellectual property law from Università degli Studi di Torino. I am licensed to practice law before 40 state and federal courts in the United States, including the State Bars of California, Massachusetts, Arizona, Nevada, and Florida. I am licensed in 10 federal courts of appeal, 24 federal courts, and before the United States Supreme Court. I am a published author in 16 law review articles on issues in this area of law, and I was a columnist for CNN on legal issues. I am asked to lecture on these issues across the United States and internationally as well.

**OVERVIEW**

3.      I have been asked to opine on the issue of who, in my expert opinion, properly owns the Instagram account @ignite.

4.      I was asked to provide my opinion on the basis of my license to practice law in California as well as my expertise in international intellectual property law and my decades of experience in Internet law.

- 1 -

RANDAZZA
LEGAL GROUP

**OPINIONS**

5.      It is my opinion that Dan Bilzerian personally owns the Instagram account @ignite. The reasons for this are as follows.

6.      Determining ownership over anything requires us to apply principles of property law. The first step in the analysis of who owns property *now* is to determine who the *original* owner was. See *Pierson v. Post*, 3 Cai. R. 175 (N.Y. 1805) (determining original owner of a fox); *Lightfoot v. Davis*, 198 N.Y. 261, 265, 91 N.E. 582 (1910) (discussing the principle of title by first possession).

7.      Social media accounts are *property*, but a type of property that is unlike real property or a physical chattel. This property interest lies at a confluence of contract law and intellectual property law. It is not like property that is either captured, like the fox in *Pierson v. Post*, nor entirely by creation like other forms of intellectual property. *360 Destination Grp. Fla, LLC v. 360 DG, LLC*, 2024 U.S. Dist. LEXIS 106413, *13 (C.D. Cal. June 13, 2024) (citing 17 U.S.C. § 201(a) (noting that ownership of a copyrightable work initially vests in the author upon creation of the work). Property is a "bundle of rights" and the bundle that creates the property interest here is subject to rules like any other property interest, but also enjoys certain analogous elements with "created" property, such as copyright ownership.

8.      When you create any social media account, you typically agree to Terms of Use which outline the responsibilities and rights of the parties and which are integral to determining who is the original owner of the account and what the limitations on that ownership might be.

9.      Instagram has Terms of Use located at: https://help.instagram.com/581066165581870/.

- 2 -

RANDAZZA
LEGAL GROUP

10.     The contractual obligations between Bilzerian and Instagram are integral components of the property right – arguably more so than any other component of the legal analysis. *See, e.g., Barris Indus. v. Worldvision Enters.,* 875 F.2d 1446, 1449 (9th Cir. 1989) (finding that ownership of copyright among multiple purported owners must be determined by reference to the relevant contract). Given freedom of contract principles in the United States and under California law, even the government could not modify the contractual rights between those parties. *See, e.g., Nat'l Ins. Underwriters v. Carter,* 17 Cal. 3d 380, 388 (1976) (in the context of insurance agreements, noting that "in the absence of any general declaration of public policy . . . we discern no reason to interfere with the parties' full freedom to contract for coverage on any terms not specifically prohibited by statute").

11.     It appears to be undisputed that Mr. Bilzerian *created* the @ignite account. *See, infra,* Bilzerian Aff. at ¶ 13. At the time of that creation, the opposing party in this matter did not exist. Accordingly, any property rights in the account clearly belonged to *someone*, and that someone could only be Mr. Bilzerian.

12.     While black letter principles of property law would compel this conclusion, those principles *could be* modified by contract.

13.     Accordingly, the only contractual terms that would be in play at the origin of the account would be the Instagram terms of use.

14.     The relevant term in the Instagram terms of use is found at § 4.3 of the terms. In that section, Instagram recognizes that users retain all rights to their content, subject to a grant of a license to Instagram to exploit some elements of the account. The user retains all other rights, including the right to delete the account. *See* Terms of Use, Instagram.com, § 4.3, available at: https://help.instagram.com/581066165581870/ Furthermore, the terms of use explicitly create a

- 3 -

RANDAZZA
LEGAL GROUP

license between the user and Instagram, where Instagram gains a license to certain uses of the Instagram handle/username. Such a grant necessarily means that Instagram intended that the person who creates the account owns the account. Otherwise how could the user license something he does not own?

15. Since Bilzerian owned the account when he created it, and nothing in Instagram's terms of use modifies that property interest, we must examine whether an account created by, and thus owned by, Bilzerian could be transferred to Ignite by some means, if those means are present here, and if there is a limitation on those means.

16. Bilzerian claims in his affidavit that "At no time did Bilzerian transfer or assign the right, title or ownership of the Account to the Company. No assignment documents have ever been executed by Dan Bilzerian in favor of Ignite." Bilzerian Aff. at ¶ 27.

17. Normally, a layperson's testimony about whether he had assigned property rights might not be particularly persuasive, as assignments of property can often be done as part of a larger transfer of rights. Accordingly, I am discounting Bilzerian's claim that he did not do so, as a legal conclusion. I am crediting Bilzerian's statement as meaning that he did not provide any indication to a third party that he has transferred that right. But with respect to him, he simply lacks the qualification to conclude that he did not "transfer or assign the right, title, or ownership."

18. A social media account is a hybrid piece of intellectual property, most closely analogous to copyright. In fact, it possesses some trace elements of trademarks – for example, a social media account that had a username such as "Air Canada" could be an infringement on Air Canada's trademark rights. Trademark law primarily serves a customer protection function by letting consumers of goods and services know they are buying the genuine article. Unlike copyrights, however, an infringing trademark can be changed to avoid consumer confusion, just

- 4 -

RANDAZZA
LEGAL GROUP

like an infringing Instagram name.  Accordingly, the name of a social media account may be comparable to a trademark, but every other aspect of it (namely, the content on the account) bears a much stronger resemblance to copyrightable works.

19.     A social media account is closest to copyright in the content of a website or advertising material. It is comprised of original works of authorship (photographs and videos) created and published by the owner of the account. In this way, the account is distinct from other forms of intellectual property, such as trademarks (which do not encompass expressive works and are commercial speech) or trade secrets (which are not implicated here).

20.     In the case of an Instagram account, the name can be changed at will.  Therefore, the "account" itself is a collection of the photos and content collected under that account – or a body of copyrighted works that are curated into a vertically integrated account.

21.     Accordingly, it is my assessment that when we look at an Instagram account, we must consider basic property principles, contract principles, and copyright transfer principles.  Obviously, copyright interests can be transferred.  However, such transfer must be done pursuant to certain formalities.

22.     The U.S. Copyright Act provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a); *Stiletto Tv, Inc. v. Hastings*, 392 F. Supp. 3d 1133, 1139 (C.D. Cal. 2019). None seems to exist here.

23.     Bilzerian has testified that he never transferred rights in the Instagram account.  Any such transfer could *only* have occurred through a written assignment. However, let us presume for the sake of argument that Mr. Bilzerian is not being forthcoming. I have no reason

- 5 -

RANDAZZA
LEGAL GROUP

to believe him to be dishonest, I simply wish to be thorough and presume so for the sake of complete analysis.

24.     Prior to looking for a transfer or assignment that may have been hidden from us, we should determine what would need to be done in order to transfer or assign the account. To do this, we must return to the foundational document for the bundle of rights that creates an account in the first place. At § 4.2 of the Terms of Use, Instagram makes it clear that the rights it gave to Bilzerian at the inception of the account are non-transferable.

> **You can't sell, license, or purchase any account or data obtained from us or our Service, regardless of whether such data was obtained while logged-in to an Instagram account.**
> This includes attempts to buy, sell, or transfer any aspect of your account (including your username); solicit, collect, or use login credentials or badges of other users; or request or collect Instagram usernames, passwords, or misappropriate access tokens.

25.     Accordingly, let us presume *arguendo* that there is a contract between Bilzerian and Ignite wherein Bilzerian purports to transfer all ownership and interest in the @ignite account to Ignite. This contract would be void, as Bilzerian would have had no more right to transfer the ownership to a third party than he would have the ability to violate the laws of physics to transmute real property into some other physical form.

26.     Since we have determined that as a creature of the Terms of Use, Bilzerian could never have transferred the copyright or the account voluntarily, we should look at whether it could have been transferred involuntarily. Under U.S. law, involuntary transfers of this form of intellectual property are so disfavored as to be virtually impossible. Of course, the Terms of Use do not seem to permit involuntary transfers, but for the sake of complete analysis, let us presume that they could be interpreted to allow involuntary transfers. After all, my intent in this report is to consider all contingencies, including a novel reading of the Terms, or perhaps even if the Terms

- 6 -

RANDAZZA
LEGAL GROUP

themselves were changed by Instagram, tomorrow, to allow involuntary transfers - would the law allow them? I believe it would not.

27.     "When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, *no action by any governmental body* or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11." 17 U.S.C. § 201(e) (emphases added).

28.     The leading authority on American copyright law explains:  The stated purpose of this prohibition was to "protect foreign authors against laws and decrees purporting to divest them of their rights under the United States copyright statute, and would protect authors within the foreign country who choose to resist such covert pressures." More particularly it was feared that the Soviet Union, by its accession to the Universal Copyright Convention on February 27, 1973, would be enabled to enforce censorship in the United States of the works of its dissident authors through the device of seizing the ownership of such works, and then by enforcing the American copyright therein, enjoin any public distribution within the United States. 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.4 (footnote omitted).

29.     The legislative history of 17 U.S.C. § 201(e) explains that "[t]he purpose of this subsection is to reaffirm the basic principle that the United States copyright of an individual author shall be secured to that author, and cannot be taken away by any involuntary transfer." H.R. Rep. 94-1476, at 123 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5739.

30.     Bilzerian's rights in the account thus could not have been transferred involuntarily, and there is no written assignment or transfer of such, which is the only way he could assign them.

- 7 -

RANDAZZA
LEGAL GROUP

Accordingly, there appears to be no legal way that the @ignite account could belong to anyone other than Bilzerian, and whether he wanted to or not, he cannot assign it. And nobody could involuntarily seize it from him.

31.    This would conclusively establish that under California and US law, this account belongs to Bilzerian and the only way he could dispose of it would be to destroy it - a right he retains. However, nothing he could do could voluntarily could transfer it to a third party, nor could any operation of law transfer it to a third party.

32.    My analysis is predicated on facts in an affidavit that Bilzerian provided sworn under penalty of perjury:

a.    In March 2016, before Ignite was created, Bilzerian created an Instagram account that is currently titled "@Ignite" (the "**Account**"), using his personal information to set it up, including his personal cell phone number.

b.    Dan Bilzerian was the sole creator and owner of the Account.

c.    The Account used Bilzerian's name, picture and likeness in nearly every post. The photographs and videos depict him (the man with the beard) and his lifestyle.

d.    Bilzerian first created the Account in March of 2016 under a different name, which he recalls was @DiscountVape or something similar and before it was named @Ignite. Bilzerian changed the username of the Account two or three times. Then, in or around 2018, Bilzerian changed the username of the Account to @Ignite.

e.    Attached as **Exhibit "A"** to his affidavit is a true copy of the screenshot that Bilzerian took on February 11, 2025 of the "About this account" information page for the Account located at https://www.instagram.com/ignite/, showing Bilzerian

- 8 -

RANDAZZA
LEGAL GROUP

created the Account in March 2016, and that prior to being named @Ignite, the Account had 3 other usernames.

f.     At all material times, Bilzerian has solely operated and controlled the Account including approving all content, given the Account is Bilzerian's property, using and portraying his name, picture and likeness.

g.     At all material times, Bilzerian has solely and exclusively maintained possession and control over access, including the log-in and password to the Account.

h.     At no time did Bilzerian transfer or assign the right, title or ownership of the Account to the Company. No assignment documents have ever been executed by Dan Bilzerian in favor of Ignite.

i.     At no time did Bilzerian authorize or give permission for the Company to use, in whole or in part, the Account.

j.     At no time did Bilzerian receive compensation to transfer, assign, license or use the Account.

k.     Bilzerian never signed any written agreement or orally agreed with Ignite that the Account belongs to Ignite, or that he transferred ownership of the Account to Ignite.

### RESEARCH CONDUCTED

33.    I conducted US Case law research and review of the terms of use for Instagram.

34.    I relied on Instagram's Terms of Use and Mr. Bilzerian's sworn affidavit.

- 9 -

**RANDAZZA**
LEGAL GROUP

## INDEPENDENCE, DUTY, CERTIFICATIONS AND QUALIFICATIONS

35.     I, Marc J. Randazza, am the person responsible for the content of this report contained in this affidavit. I am admitted to the state and federal bars as set forth in my attached resume. I am qualified and licensed to practice before the same.  See attached my resume (**Appendix A**) which further summarizes my qualifications, and employment, and educational experience in my areas of practice.

36.     My affidavit has been prepared independently. My remuneration for my affidavit is not contingent upon my opinions or conclusions contained herein.

37.     My instructions were provided to me from Jakub Medrala, Esq.

38.     I confirm that I acted independently and objectively in preparing my report. I certify that I am aware of my duty as an expert witness to assist the court, and not to be an advocate for any party, in accordance with the Supreme Court of British Columbia Rule 11-2(1). I have prepared my report in conformity with that duty. If I am called on to give further testimony, it will also be in conformity with that duty.

39.     I, Marc J. Randazza, am the person responsible for this affidavit.

I declare under penalty of perjury that the foregoing is true and correct to the best of my ability.

Dated: ___27 Feb 2025___    By:_____
                                            Marc J. Randazza

**SEE ATTACHED
NOTARY CERTIFICATE**

- 10 -

**RANDAZZA**
LEGAL GROUP

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Santa Clara -------

Subscribed and sworn to (or affirmed) before me on this 27 day of February , 20 25 , by Marc John Randazza

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

JUSTIN BE
COMM. #2373937
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Exp. Sept. 23, 2025

(Seal)                                    Signature



# **RANDAZZA**
## LEGAL GROUP

## **APPENDIX A**

## MARC J. RANDAZZA, JD, MAMC, LLM

## CURRICULUM VITAE

**Marc J. Randazza, JD, MAMC, LLM**
**CURRICULUM VITAE**

**Legum Magister (LLM)**
2014 | Università di Torino Facoltà di Giurisprudenza
*International Intellectual Property Law*
LLM program administered by the University of Turin, the U.N.'s International Labour Organization and the World Intellectual Property Organization.

**Juris Doctor (JD)**
2000 | Georgetown University Law Center
*Focus on First Amendment and media law*

**Master of Arts in Mass Communication (MAMC)**
2003 | University of Florida
*Focus on research in media studies, branding, public relations, and advertising as well as publication and teaching in First Amendment studies*

**Bachelor of Arts in Journalism (BA) with honors**
1994 | University of Massachusetts
*Focus on media law studies*

---

## LEGAL PRACTICE EXPERIENCE

**RANDAZZA LEGAL GROUP, Managing Partner** | July 2009 to Present

**Litigation and Appellate Practice**
- First Amendment litigation and appeals
- Intellectual property litigation and appeals
- Anti-SLAPP litigation and appeals
- Intermediary liability litigation under the CDA (47 U.S.C. § 230) and the DMCA (17 U.S.C. § 512)
- Litigation consulting in foreign actions in order to ensure enforceability of foreign defamation claims under 28 U.S.C. §§ 4101-4105
- International arbitrations involving intellectual property disputes

**Transactional Practice**
- Providing advice to clients on First Amendment, copyright, trademark, domain name law, internet law, and entertainment law
- Trademark registration practice in United States, Canada, and Europe
- Negotiating and drafting intellectual property agreements including right of publicity, non-competition, and trade secret protection agreements
- Drafting online affiliate agreements, terms & conditions, and privacy policies
- Providing advice on state, federal, and international regulatory matters

**WESTON, GARROU, WALTERS & MOONEY, Partner** | July 2004 to July 2009

**Litigation and Appellate Practice**
- First Amendment litigation and appeals
- Intellectual property litigation
- International intellectual property arbitrations

**Transactional Practice**
- Trademark registrations and administrative appeals.
- Negotiating and drafting intellectual property agreements including right of publicity transactions, non-competition agreements, and trade secret protection agreements

---

**Marc J. Randazza, JD, MAMC, LLM**
**CURRICULUM VITAE**

**BECKER & POLIAKOFF, PA, Associate** | January 2003 – June 2004

**Litigation and Appellate Responsibilities**

- Providing pre-publication review, and libel defense counsel to publications

- Handling zoning and First Amendment issues

- Advising clients on FCC regulations

- Advising clients on copyright issues

**Real estate/corporate/community association practice**

- Corporate counsel to condominium, cooperative, and homeowners associations

- Assisting clients with resolution of construction defect, maintenance, and covenant enforcement disputes

- Defamation counseling to condo and homeowners association boards

## CLERKSHIPS

**RYDIN & CARLSTEN ADVOKATBYRÅ AB, Summer Associate** | Stockholm, Sweden, Summer 1999

- Researching and writing memoranda for the firm's intellectual property law practice

- Second-chair to a case in the International Court of Arbitration resulting in a $2.8 million verdict in a commercial dispute

**SUPREME COURT OF VERMONT, Judicial Law Clerk** | Montpelier, Vermont, Summer 1998

- Writing memoranda of law for Justice Denise Johnson

- Writing draft opinions that were later adopted and published by the Supreme Court

## LEGAL TEACHING EXPERIENCE

**Università di Torino Facoltà di Giurisprudenza** | Turin, Italy, October 2015 to present

- Serve as thesis advisor to LLM Students in the International Intellectual Property Law program sponsored by the World Intellectual Property Organization and teach Freedom of Expression and International Intellectual Property Rights on an annual basis

- Teach *Freedom of Expression and International Intellectual Property Rights* course annually

**Barry University School of Law** | Orlando, Florida, August 2006 to May 2009

**Courses Taught:**

- First Amendment Law, 2007 – 2009

- Trademark Law, 2006 – 2009

- Entertainment Law, 2007 – 2009

- Copyright Law, 2006 – 2007

- Sports Law, 2007

**Additional Activities and Responsibilities:**

- Serving as a supervised research advisor to multiple students for First Amendment and intellectual property publications and research

- Assisting with First Amendment moot court competition

**Marc J. Randazza, JD, MAMC, LLM**
## CURRICULUM VITAE

**University of Florida, Research and Teaching Fellowship** | Gainesville, Florida, August 2000 - May 2002

- Teaching classes on media law, including coverage of copyright, trademark, obscenity, libel, campaign finance, and constitutional law

- Assisting in the production of a media law case book

- Conducting legal research and writing for publication in various law journals

## ACADEMIC AND LEGAL PUBLICATIONS

- *The Freedom to Film Pornography,* 17 NEVADA L.J. 99 (2017)

- *Lenz v. Universal: Reform § 512(f) of the DMCA,* 18 VANDERBILT J. ENT. & TECH LAW 4 (2016)

- *Ulysses - A Mighty Hero in the Fight for Freedom of Expression,* 11 U. MASS. L. REV. 268 (2016)

- *Kosovo's Digital Independence: Time for Kosovo's ccTLD,* WISCONSIN INT'L L.J., Vol. 33, No. 4 (2016)

- *Freedom of Expression and Morality-Based Impediments to the Enforcement of Intellectual Property Rights,* 16 NEVADA L.J. 107 (2015)

- *"War of the Words": Differing Canadian and American Approaches to Internet Defamation",* in Todd L. Archibald and Randall Scott Echlin, eds., ANNUAL REVIEW OF CIVIL LITIGATION IN CANADA 2015, Toronto: Thomson Carswell, 2015, 403 (co-authored with Antonin I. Pribetic)

- *The Legal Status of Making Adult Films in Nevada,* 23 NEVADA LAWYER 20 (May 2015)

- *Nevada's New Anti-SLAPP Law: The Silver State Sets the Gold Standard,* 21 NEVADA LAWYER 7 (Oct. 2013)

- *The Need for a Unified and Cohesive National Anti-SLAPP Law,* 91 OR. L. REV. 627 (2013)

- *Gambling in America's Senior Communities,* 8 MARQ. ELDER ADVISOR 343 (2007)

- *The Florida Supreme Court Dulls the Edge of Rule 1.420(e),* 80 FLA. B.J. 39 (2006)

- *Condo Casino! Gambling in Florida Community Associations,* 79 FLA. B.J. 8 (2005)

- *The Other Election Controversy of Y2K: Core First Amendment Values and High-Tech Political Coalitions,* 82 WASH. U. L. Q. 143 (2004)

- *Getting to Yes with Terrorists,* 2002 L. REV. M.S.U.-D.C.L. 823. (2002)

- *Breaking Duverger's Law is not Illegal: Strategic Voting, the Internet and the 2000 Presidential Election,* 2001 UCLA J.L. & TECH. 6. (2001)

- *The Constitutionality of Online Vote Swapping,* 34 LOYOLA L.A. L. REV. 1297 (2001)

## CNN LEGAL COLUMN

- *Scottish comedian's Nazi salute dog video was awful. But it wasn't a crime,* CNN, March 22, 2018

- *Even Trump has a right to free speech,* CNN, November 7, 2017

- *The best way to respond to Las Vegas massacre,* CNN, October 2, 2017

- *Outrage over Google memo goes too far,* CNN, August 8, 2017

- *Rock band The Slants' victory in court secures your rights,* CNN, June 20, 2017
- *Why Turkish embassy violence is unforgivable,* CNN, May 19, 2017
- *Jail for laughing protester is an outrage,* CNN, May 5, 2017
- *Dear Berkeley: Even Ann Coulter deserves free speech,* CNN, April 24, 2017
- *Does Melania Trump's libel suit really threaten a free press?,* CNN, December 29, 2016
- *Is Peter Thiel right about Gawker?,* CNN, May 26, 2016
- *Texting cop a victim of thought police?,* CNN, April 28, 2016
- *Defend Donald Trump's right to free speech,* CNN, Mar. 14, 2016
- *Is the First Amendment safe from Donald Trump?,* CNN, Feb. 28, 2016
- *For Missouri Professor, the Law Bites Back,* CNN, Jan. 27, 2016
- *Passenger Who Beat His Uber Driver Should Drop His Countersuit,* CNN, Jan. 21, 2016
- *We Don't Shoot People For Bigoted Views,* CNN, May 4, 2015
- *Decision on Asian-American Band's Name is Wrong,* CNN, Apr. 23, 2015
- *What's Wrong with Saying the Pledge in Arabic?* CNN, Mar. 23, 2015
- *What We Risk When We Ban Racists Speech,* CNN, Mar. 20, 2015
- *Why Schools Should Observe "Day of the Dude,"* CNN, Mar. 6, 2015
- *Should We Always Believe the Victim?* CNN, Dec. 7, 2014
- *ESPN's Stephen Smith is Entitled to His Opinions,* CNN, Aug. 4, 2014
- *Why Redskins Decision is Wrong,* CNN, June 21, 2014
- *Posting Elliot Rodger's Video is Legal, but is it Right?* CNN, May 29, 2014
- *We Need a "Right to be Forgotten,"* CNN, May 15, 2014
- *What Happened to Sterling was Wrong,* CNN, Apr. 30, 2014
- *N.J. Texting Ruling is Not What You Think,* CNN, Aug. 30, 2013
- *Chick-fil-A and Free Speech,* CNN, July 31, 2012
- *It's Un-American to Silence Rush Limbaugh,* CNN, Mar. 12, 2012

## SPEAKING ENGAGEMENTS

- Freedom of Expression and Anti-SLAPP statutes, New Hampshire Liberty Forum (Manchester, NH, Mar. 5, 2022)
- First Amendment Day, University of North Carolina (Chapel Hill, NC, Sept. 29, 2021)
- Saper Law Immersion Program, First Amendment Law for High Schools, (Chicago, IL, Aug. 4, 2021)
- World Intellectual Property Organization ("WIPO") LLM Program, *Intersection of Freedom of*
- *Expression and International Intellectual Property Rights* (Turin, Italy, May 24, 2021)
- ABA 24th Annual Conference of the Forum on Communications Law, *Fifty Years after Brandenburg v. Ohio* (Miami, Feb. 2, 2019)
- *Copyright Enforcement Issues in the Digital Age, an American Perspective* (Pristina, Kosovo, Dec. 5, 2018)

- World Intellectual Property Organization ("WIPO") LLM Program, *Intersection of Freedom of Expression and International Intellectual Property Rights* (Turin, Italy, Nov. 16, 2018)

- University of New Hampshire Student Intellectual Property Association, *Section 2(a), In re Tam, and "Problematic" Speech* (New Hampshire, April 20, 2017)

- European Law Students' Association Conference (Trieste, Italy, May 2016)

- First Amendment Lawyers Association, *Morality and IP Rights* (Austin, TX, Feb. 12, 2016)

- Internet Law Leadership Conference, *Anti-SLAPP Statutes and Litigation Strategies* (Las Vegas, Nov. 19, 2015)

- European Law Students' Association Summer Law Institute, *Freedom of Expression and Morality-Based Impediments to the Enforcement of Intellectual Property Rights* (Trieste, Italy, July 28, 2015)

- European Law Students' Association Summer Law Institute, *Global Freedom of Expression and New Media, an American Perspective* (Trieste, Italy, July 27, 2015)

- James Joyce School, *Joyce's Ulysses, an Unsung Hero in the Fight for Freedom of Expression* (Trieste, Italy, July 3, 2015)

- Virgin Islands Bar Association, *Keynote Speech — Anti-SLAPP laws and freedom of speech in the Virgin Islands* (US Virgin Islands, Dec. 13, 2014)

- Virgin Islands Bar Association, *The Law and Ethics of Social Media* (US Virgin Islands, Dec. 13, 2014)

- First Amendment Lawyers Association, *A Comparative Analysis of Canadian and American Defamation Law* (Toronto, Canada, July 2014)

- Beverly Hills Bar Association *Panel: Pornography, Coercion, and the Courts: The Rise and Fall of Copyright Trolling*, Discussion with Morgan Pietz

- on ethical enforcement of copyright and Prenda Law (Los Angeles, CA, May 2, 2014)

- The Stanford Technology Law Review 2013 Symposium: *Privacy Challenges in the Internet Age,* Lecture on Internet Torts & Cybercrimes (Stanford, CA, April 11, 2014)

- Above The Law Attorney@Blog Conference, Lecture on copyright, trademark, defamation, and general Internet issues to numerous attorneys and members (New York, NY, Mar. 2014)

- First Amendment Lawyers' Association, Lecture on updates in defamation law and related litigation in prominent cases across the country (Philadelphia PA, July 2013)

- Nevada Legislative Session 2013, *Drafted, lobbied, and successfully argued for the passage of a revised anti-SLAPP statute in Nevada and revision to proposed human trafficking law with potential First Amendment implications for production of adult entertainment* (Carson City, NV, May 2013)

- Nevada Libertarian Party Convention, Lecture on freedom of expression and First Amendment matters (Las Vegas, NV, Apr. 2013)

- First Amendment Lawyers' Association, Lecture on updates, development, and application on Anti-SLAPP statutes and defamation cases across the country (New Orleans, LA, Feb. 2013)

- First Amendment Lawyers' Association, Lecture on updates, development, and application on Anti-SLAPP statutes across the country (Chicago, IL, July 2012)

- CineKink Film Festival, Lecture on First Amendment and intellectual property issues in the adult entertainment industry (Las Vegas, NV, June 2012)

- American Intellectual Property Law Association, Lecture on updates, development, and application

Case 2:25-cv-08882-CAS-MBK    Document 27-6    Filed 12/09/25    Page 26 of 40    Page
ID #:199

022

Marc J. Randazza, JD, MAMC, LLM
**CURRICULUM VITAE**

Page 6 of 11

on Anti-SLAPP statutes across the country (Austin, TX, Spring Meeting 2012)

- First Amendment Lawyers' Association, Lecture on updates, development, application of Anti-SLAPP statutes (San Diego, CA, Feb. 2012)

- First Amendment Lawyers' Association, Lecture on issues in BitTorrent litigation (Minneapolis, MN, July 2011)

- First Amendment Lawyers' Association, Lecture on copyright litigation and the errors present in current anti-piracy litigation models (Washington, D.C., Feb. 2011)

- XBIZ LA Conference, Lecture on intellectual property law and piracy litigation issues (Los Angeles, CA, Feb. 2011)

- InterNext Conference, Panel discussion concerning online adult entertainment issues, focusing on antipiracy litigation trends and strategies (Las Vegas, NV, Jan. 2011)

- First Amendment Lawyers' Association, Lecture on the intersection of intellectual property law and free speech (San Antonio, TX, Feb. 2010)

- International Trademark Association, Table topics leader (Boston, MA, May 2010)

- First Amendment Lawyers' Association, Lecture on the intersection of intellectual property law and free speech (Vancouver, BC, July 2009)

- First Amendment Lawyers' Association, Lecture on the intersection of intellectual property law and free speech (New Orleans, Feb. 2009)

- Adult Entertainment Expo, Lecture on intellectual property, brand management, free speech issues and section 2257 (Las Vegas, NV, Jan. 2009)

- First Amendment Lawyers' Association, Lecture on U.S. trademark law and domain name disputes (San Francisco, CA, July 2008)

- Seminole County Inns of Court, Lecture judges and lawyers on defamation law issues (Orlando, FL, Feb. 10, 2008)

- The International Institute of Communications Annual Meeting, Lecture on US media law to an audience of international businesspeople, government officials, and academics. (Singapore, Oct. 1–4, 2001)

- Friedrich Ebert Stiftung and Nanyang Technological University Conference on "Media, Civil Society and Good Governance in Southeast Asia," Lecture on media law in the post-September 11th United States. (Singapore, Nov. 7–9, 2001)

- Association for Education in Journalism and Mass Communication (AEJMC) southeast colloquium, Lecture on Internet law (Columbia, SC, Mar. 8–10, 2001)

## OTHER PUBLICATIONS

- *Stormy Daniels Was Arrested Because of a Terrible Law That Threatens Free Expression*, Reason, July 13, 2018

- *2016 Presidential Race: A Closer Look*, AVN, Mar. 2016

- *What the Slants Case Means for the Adult Industry*, AVN, Feb. 16, 2016

- *What the Adult Industry Owes to James Joyce*, XBiz, Dec. 11, 2015

- *Adult Biz & the Law: Violations and the Violated*, XBiz, Jan. 23, 2015

- *Is It Legal to Shoot Porn in Your State?*, XBiz, Mar. 30, 2014

- *Copyright Ruling May have Implications for Adult Industry*, XBIZ, Mar. 1, 2014

- *Reversal of Fortune in Taiwan for Porn Producers*, XBIZ, Feb. 25, 2014

- *The Case for Relocating Porn Production to Las Vegas*, XBIZ, Aug. 6, 2012

- *Challenging the Copyrightability of Porn*, XBIZ, Apr. 19, 2012

- *Malign Neglect*, ADULT VIDEO NEWS, Jan. 2012

- *Are You Guilty If Pirates Use Your Internet?* TORRENTFREAK, Aug. 6, 2011

- *XXX Revenue Reporting?*, XBIZ WORLD, July 28, 2010

- *Standard Deviation: What's Obscene in an Online World?*, ADULT VIDEO NEWS, Feb. 1, 2010

- *A Domain by Any Other Name…*, ADULT VIDEO NEWS, Dec. 1, 2008

- *2257 Regs a Boon to Patriotic Adult Film Producers*, ADULT VIDEO NEWS, Jun. 2, 2005

- *Foreign Content and Section 2257*, XBIZ, Aug. 4, 2005

- *Republicans Save US Jobs (unwittingly)*, XBIZ, May 31, 2005

- *Commentary for Congress*, ADULT VIDEO NEWS, Mar. 2005

- *Kiffmeyer – Too Partisan for the Job?* MINN. LAW & POLITICS, Summer 2004

- *Copyright and the Clubhouse*, CONDO MANAGEMENT, Nov. 2003

- *Character Counts: Defamation Law for Community Associations*, COMMUNITY UPDATE, Jan. 2003

- *Copyright Issues for Free Fall Photographers*, SKYDIVING MAGAZINE, Oct. 2003

- *Neither is a Fish or a Bird (the Prisco Decision)*, 25 ACTIONLINE 4, (2003)

- *Satellite Dishes and Community Associations*, CONDO MANAGEMENT, (2003)

- *The Forgotten Electoral Controversy*, INTERMEDIA, Apr. 2001

---

## TELEVISION & RADIO GUEST APPEARANCES

- *Morningstar Ministries addresses discrimination lawsuit against York County*, WBTV Charlotte (Nov. 29, 2018)

- "Defending The Indefensible," *On the Media*, NPR (Aug. 10, 2018)

- *This guy is trying to hunt down one of the most notorious Neo-Nazis*, Vice News (Jan. 31, 2018)

- *Real Estate Agent Says She Was Neo-Nazi Website Devotees' 'Troll Storm' Target*, ABC Nightline (Aug. 24, 2017)

- *Meet the lawyer defending notorious neo-Nazi trolls*, Vice News (Aug. 3, 2017)

- "Billionaires And Free Speech," *On Point with Tom Ashbrook*, NPR, (June 1, 2016)

- *Peel Off Labels* (America Matters Media Mar. 7, 2016)

- CBS News, Roca Labs Case, (CBS Oct. 1, 2015)

- *The Daily Share*: Discussing the Redskins Trademark Decision (Headline News Network July 9, 2015)

- *Ralston Reports: Anti-SLAPP?* (Apr. 23, 2015)

- *Ralston Reports: First Amendment and SLAPP Cases* (Aug. 7, 2014)

Marc J. Randazza, JD, MAMC, LLM
**CURRICULUM VITAE**

- *Michael Smerconish Show: Sterling, Sam and Free Speech* (CNN May 17, 2014)
- *CNN Newsroom: Was Leak of NBA Owner's Rant 'Morally Wrong'* (CNN May 1, 2014)
- *Legal View with Ashleigh Banfield: What's Next for Donald Sterling?:The First Amendment and a Technological Surveillance Society* (CNN Apr. 30, 2014)
- *Democracy Now!: Steubenville Rape Trial* (Feb. 2013)
- CNN, *Discussing the Steubenville Rape Case* (Feb. 2013)
- Reason TV: *Discussing Steubenville Rape Case* (Feb. 2013)
- *Crime, Inc.: Discussing Copyright Law* (CNBC Aug. 29, 2012)
- NBC Las Vegas: *Internet providers turn to attorneys to protect content* (KSNV July 25, 2013)
- NBC Bay Area: *Porn Copyright Trolls* (July 3, 2012)
- National Public Radio: *On the Media, Combating "Bad" Speech with More Speech* (Apr. 6, 2012)
- KLAS-TV: *Economic Diversity By Legalizing Marijuana* (Mar. 26, 2012)
- *State of Nevada, The End of Righthaven*, (Nevada Public Radio Mar. 22, 2012)
- *Michael Savage: First Amendment Att'y Speaks About Freedom of Speech* (Mar. 14, 2012)
- *Cyber Law and Business Report: Randazza, Righthaven, and Roger Williams* (Dec. 21, 2011)
- *Congress Weighs Law Against Some Lawsuits* (National Public Radio Apr. 2, 2010)
- *Cyber Harassment and the Law* (National Public Radio Mar. 3, 2009)
- Fox 35 Orlando: *Kids Can't Play Outside Condos* (Mar. 3, 2009)
- Fox 35 Orlando: *New Year's Festivities and the Law* (Dec. 30, 2008)
- Fox 35 Orlando: *Teacher to Blame Hormones* (Nov. 19, 2008)
- Fox 35 Orlando: *Target Mis-prices Car Seats* (Nov. 18, 2008)
- *Lisa Macci's The Justice Hour: Discussing new Sex Laws and The Theory of Intentional Sex Torts* (WWNN July 14, 2008)
- *The Curtis Sliwa Show, discussing the Bauer v. Wikipedia defamation case, and Section 230* (WABC: New York July 1, 2008)
- *Lisa Macci's The Justice Hour: Discussing the Connection Distribution case and Section 2257* (WWNN May 5, 2008)
- *Fox and Friends: The First Amendment and the "Lyrical Terrorist"* (Fox News Nov. 10, 2007)
- *Fox and Friends: Discussing Bradenton High School "Body Painting" Issue* (Fox News Oct. 18, 2007)
- *Lisa Macci's The Justice Hour: SLAPP suits and attorney ethics* (WWNN Jul. 2, 2007)
- *Fox and Friends: Discussing Don Imus' Comments about the Rutgers' Basketball Team* (Fox News Apr. 10, 2007)
- *Lisa Macci's The Justice Hour: Restrictions on Attorney Speech* (WWNN Jan. 22, 2007)
- *CNBC: On the Money, Discussing online gambling and prosecutions* (Jan. 16, 2007)
- *Domain Masters: Discussing domain law, gaming law, and First Amendment law with Monte Cahn.* (Dec. 22, 2006)
- *Bess Kargman: "Blogsuits" What Effect will Libel Threat Have on the Blogosphere?* (Oct. 23, 2006)
- *The Lineup: Video Games and the First Amendment* (Fox News Sept. 30, 2006)
- *The Lineup: First Amendment and Prisons* (Fox News Sept. 9, 2006)

Marc J. Randazza, JD, MAMC, LLM
**CURRICULUM VITAE**

- *Heartland with John Kasich:*
  *First Amendment Issues and Public Schools*
  (Fox News Dec. 30, 2005)

- *Dayside: Commentary on Church-State Issues*
  (Fox News Nov. 9, 2005)

- *Heartland with John Kasich: Commentary on*
  *Separation of Church and State*
  (Fox News Oct. 15, 2005)

- *Live: Commentary and Debate on Online Vote*
  *Pairing* (Fox News Oct. 17, 2004)

- *Bob Frantz Show: News/Talk 1370: Discussing*
  *Election Law Issues* (Oct. 10, 2004)

## REPORTED CASES

- McBreairty v. Sch. Bd. of RSU22, 616 F. Supp. 3d 79 (D. Me. 2022)

- TGP Communs., LLC v. Sellers, 2022 U.S. App. LEXIS 33641 (9th Cir. Dec. 5, 2022)

- St. Michael's Media, Inc. v. Mayor & City Council of Balt., 566 F. Supp. 3d 327 (D. Md. 2021)

- Williams v. Lazer, 495 P.3d 93 (Nev. 2021)

- Brown v. Maxwell, 929 F.3d 41 (2d Cir. 2019)

- Shapiro v. Welt, 133 Nev. 35, 389 P.3d 262 (2017) Counsel for amicus curiae

- Op. Corp. v. Roca Labs, Inc., 2016 U.S. Dist. LEXIS 8507 (M.D. Fla. Jan. 25, 2016)

- In re Tam, No. 14-1203 (Fed. Cir. Dec. 22, 2015) Counsel for amicus curiae

- Ellora's Cave Publ., Inc. v. Dear Author Media Network, LLC, 308 F.R.D. 160 (N.D. Ohio 2015)

- Van Voorhis v. Comins, 178 So. 3d 970 (Fla. 5th DCA 2015)

- Tobinick v. Novella, 2015 U.S. Dist. LEXIS 150083 (Sept. 30, 2015)

- Roca Labs, Inc. v. Consumer Op. Corp., 2015 U.S. Dist. LEXIS 143107 (Oct. 21, 2015)

- Tobinick v. Novella, 108 F. Supp. 3d 1299 (S.D. Fla. 2015)

- NML Capital, Ltd. v. Republic of Argentina, 2015 U.S. Dist. LEXIS 20722 (D. Nev. Feb. 19, 2015)

- Roca Labs, Inc. v. Consumer Opinion Corp. 2014 U.S. Dist. LEXIS 161132 (Oct. 28, 2014)

- Chevaldina v. R.K./FL Mgmt., 133 So. 3d 1086 (Fla. 3d DCA 2014)

- Expert Witness Case: Calista Enters. v. Tenza Trading, 43 F. Supp. 3d 1099 (D. Or. 2014)

- Jones v. Dirty World Entm't Recordings, 755 F .3d 398; 42 Media L. Rep. 1984 (6th Cir. 2014). Counsel for amicus curiae.

- Comins v. VanVoorhis, 135 So. 3d 545; 42 Media L. Rep. 2021 (Fla. 5th DCA 2014)

- Liberty Media Holdings v. Henson, 516 F. App'x. 673 (9th Cir. 2013)

- Righthaven LLC v. Hoehn, 716 F.3d 1166 (9th Cir. 2013)

- Rakofsky v. Washington Post, 971 N.Y.S.2d 74, 2013; 41 Media L. Rep. 1863 (N.Y. 2013)

- Katz v. Chevaldina, 900 F. Supp. 2d 1314 (S.D. Fla. 2012)

- AIRFX.com v. AirFX, 2012 U.S. Dist. LEXIS 31541, 2012 WL 780941 (D. Ariz. 9 Mar. 2012)

- Liberty Media Holdings v. Vinigay.com, 2012 U.S. Dist. LEXIS 24978, 2012 WL 641579 (D. Ariz. 28 Feb. 2012)

- Sanchez v. Joel, 94 So. 3d 594, (Fla. 2d DCA 2012)

- Liberty Media Holdings, LLC v. BitTorrent Swarm, 277 F.R.D. 669 (S.D. Fla. 2011)

- Righthaven v. Hoehn, 792 F. Supp. 2d 1138, (D. Nev. 2011)

- Righthaven v. Wolf, 813 F. Supp. 2d 1265, (D. Colo. 2011)

- Doe v. Fry, 22 Fla. L. Weekly 378, (M.D. Fla. 2010)

- Ricks v. BMEzine.com, 727 F. Supp. 2d 936, (D. Nev. 2010)

- Internet Solutions v. Marshall, 39 So. 3d 1201 (Fla. 2010)

- Internet Solutions v. Marshall, 611 F.3d 1368 (11th Cir. 2010)

- Internet Solutions v. Marshall, 557 F.3d 1293 (11th Cir. 2009)

- Solid Host, NL v. Namecheap, Inc., 652 F. Supp. 2d 1092 (C.D. Cal. 2009)

- Porter v. Bowen, 496 F .3d 1009 (9th Cir. 2007) (Not counsel in case, but my law review article was cited in the decision)

- Salle v. Meadows, 2007 U.S. Dist. LEXIS 92343, 2007 WL 4463920 (M.D. Fla. Dec. 17, 2007)

---

## ADMITTED TO PRACTICE

### States
- Massachusetts (2002)
- Florida (2003)
- California (2010)
- Arizona (2010)
- Nevada (2012)

### Federal Courts
- United States Supreme Court
- 1st Circuit Court of Appeals
- 2nd Circuit Court of Appeals
- 4th Circuit Court of Appeals
- 5th Circuit Court of Appeals
- 6th Circuit Court of Appeals
- 7th Circuit Court of Appeals
- 9th Circuit Court of Appeals
- 10th Circuit Court of Appeals
- 11th Circuit Court of Appeals
- U.S. Court of Appeals for the Federal Circuit
- U.S. District Court – District of D.C.
- U.S. District Court - District of Arizona
- U.S. District Court – North. District of California
- U.S. District Court – East. District of California
- U.S. District Court - Central District of California
- U.S. District Court - Southern District of California
- U.S. District Court - District of Colorado
- U.S. District Court - District of Columbia
- U.S. District Court - Middle District of Florida
- U.S. District Court - Northern District of Florida
- U.S. District Court - Southern District of Florida
- U.S. District Court - Northern District of Ohio
- U.S. District Court - District of Massachusetts
- U.S. District Court - Eastern District of Michigan
- U.S. District Court - Western District of Michigan

Marc J. Randazza, JD, MAMC, LLM
**CURRICULUM VITAE**

- U.S. District Court - District of Nevada
- U.S. District Court – Western District of Texas
- U.S. District Court - Northern District of Texas
- U.S. District Court – Eastern District of Texas
- U.S. District Court - Eastern District Wisconsin

- U.S. District Court – District of Connecticut
- U.S. District Court - Northern District of New York
- U.S. District Court – Western District of Michigan
- U.S. Bankruptcy Court - Eastern District of California



**APPENDIX B**

SOURCES OF INFORMATION &

RESEARCH RELIED UPON

⊙ **Help Center**

Terms and Policies

# Terms of Use

Welcome to Instagram!

These Terms of Use (or "Terms") govern your access and use of Instagram, except where we expressly state that separate terms (and not these) apply, and provide information about the Instagram Service (the "Service"), outlined below. The Meta Terms of Service do not apply to this Service.

The Instagram Service is one of the Meta Products, provided to you by Meta Platforms, Inc. These Terms of Use therefore constitute an agreement between you and Meta Platforms, Inc. If you do not agree to these Terms, then do not access or use Instagram.

**ARBITRATION NOTICE: YOU AGREE THAT DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AND YOU WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION. WE EXPLAIN SOME EXCEPTIONS AND HOW YOU CAN OPT OUT OF ARBITRATION BELOW.**

## 1. The Instagram Service

We agree to provide you with the Instagram Service. The Service includes all of the Instagram products, features, applications, services, technologies, and software that we provide to advance Instagram's mission: To bring you closer to the people and things you love. The Service is made up of the following aspects:

- **Offering personalized opportunities to create, connect, communicate, discover and share.** People are different. So we offer you different types of accounts and features to help you create, share, grow your presence, and communicate with people on and off Instagram. We also want to strengthen your relationships through shared experiences that you actually care about. So we build systems that try to understand who and what you and others care about, and use that information to help you create, find, join and share in experiences that matter to you. Part of that is highlighting content, features, offers and accounts that you might be interested in, and offering ways for you to experience Instagram, based on things that you and others do on and off Instagram.

- **Fostering a positive, inclusive, and safe environment.**
  We develop and use tools and offer resources to our community members that help to make their experiences positive and inclusive, including when we think they might need help. We also have teams and systems that work to combat abuse and violations of our Terms and policies, as well as harmful and deceptive behavior. We use all the information we have–including your information–to try to keep our platform secure. We also may share information about misuse or harmful content with other Meta Companies or law enforcement. Learn more in the **Privacy Policy**.

- **Developing and using technologies that help us consistently serve our growing community.**
  Organizing and analyzing information for our growing community is central to our Service. A big part of our Service is creating and using cutting-edge technologies that help us personalize, protect, and improve our Service on an incredibly large scale for a broad global community. Technologies like artificial intelligence and machine learning give us the power to apply complex processes across our Service. Automated technologies also help us ensure the functionality and integrity of our Service. Learn more in the **Privacy Policy**.

Feedback

information-including the information we have about you (learn more in the **Privacy Policy**) in order to provide services that are better, safer, and more secure. We also provide ways to interact across the Meta Company Products that you use, and designed systems to achieve a seamless and consistent experience across the Meta Company Products depending on your choices.

- **Ensuring access to our Service.**
  To operate our global Service, we must store and transfer data across our systems around the world, including outside of your country of residence. The use of this global infrastructure is necessary and essential to provide our Service. This infrastructure may be owned or operated by Meta Platforms, Inc., Meta Platforms Ireland Limited, or their affiliates. For more information about how we transfer, store or process your information, please review our **Privacy Policy.**

- **Connecting you with brands, products, and services in ways you care about.**
  We use data from Instagram and other Meta Company Products, as well as from third-party partners, to show you ads, offers, and other sponsored content that we believe will be meaningful to you. And we try to make that content as relevant as all your other experiences on Instagram.

- **Research and innovation.**
  We use the information we have to study our Service and collaborate with others on research to make our Service better and contribute to the well-being of our community.

## 2. How Our Service Is Funded

Instead of paying to use Instagram, by using the Service covered by these Terms, you acknowledge that we can show you ads that businesses and organizations pay us to promote on and off the Meta Company Products. We use your personal data, such as information about your activity and interests, to show you ads that are more relevant to you.

We show you relevant and useful ads without telling advertisers who you are. We don't sell your personal data. We allow advertisers to tell us things like their business goal and the kind of audience they want to see their ads. We then show their ad to people who might be interested.

We also provide advertisers with reports about the performance of their ads to help them understand how people are interacting with their content on and off Instagram. For example, we provide general demographic and interest information to advertisers to help them better understand their audience. We don't share information that directly identifies you (information such as your name or email address that by itself can be used to contact you or identifies who you are) unless you give us specific permission. Learn more about how Instagram ads work here.

You may see branded content on Instagram posted by account holders who promote products or services based on a commercial relationship with the business partner mentioned in their content. You can learn more about this here.

## 3. The Privacy Policy

Providing our Service requires collecting and using your information. The **Privacy Policy** explains how we collect, use, and share information across the Meta Products. It also explains the many ways you can control your information, including in the Instagram Privacy and Security Settings. You must agree to the Privacy Policy to use Instagram.

## 4. Your Commitments

031

Help Center

**4.1 Who Can Use Instagram.** We want our Service to be as open and inclusive as possible, but we also want it to be safe, secure, and in accordance with the law. So, we need you to commit to a few restrictions in order to be part of the Instagram community.

- You must be at least 13 years old.

- You must not be prohibited from receiving any aspect of our Service under applicable laws or engaging in payments related Services if you are on an applicable denied party listing.

- We must not have previously disabled your account for violation of law or any of our policies.

- You must not be a convicted sex offender.

**4.2 How You Can't Use Instagram.** Providing a safe and open Service for a broad community requires that we all do our part.

- **You can't impersonate others or provide inaccurate information.**
  You don't have to disclose your identity on Instagram, but you must provide us with accurate and up to date information (including registration information), which may include providing personal data. Also, you may not impersonate someone or something you aren't, and you can't create an account for someone else unless you have their express permission.

- **You can't do anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose.**

- **You can't violate (or help or encourage others to violate) these Terms or our policies, including in particular the** Community Standards, Meta Platform Terms and Developer Policies, **and Music Guidelines.**
  If you post branded content, you must comply with our Branded Content Policies, which require you to use our branded content tool. Learn how to report conduct or content in our Help Center.

- **You can't do anything to interfere with or impair the intended operation of the Service.**
  This includes misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals.

- **You can't attempt to create accounts or access or collect information in unauthorized ways.**
  This includes creating accounts or accessing or collecting information in an automated way without our express permission, regardless of whether such automated access or collection is undertaken while logged-in to an Instagram account.

- **You can't sell, license, or purchase any account or data obtained from us or our Service, regardless of whether such data was obtained while logged-in to an Instagram account.**
  This includes attempts to buy, sell, or transfer any aspect of your account (including your username); solicit, collect, or use login credentials or badges of other users; or request or collect Instagram usernames, passwords, or misappropriate access tokens.

- **You can't post someone else's private or confidential information without permission or do anything that violates someone else's rights, including intellectual property rights (e.g., copyright infringement, trademark infringement, counterfeit, or pirated goods).**
  You may use someone else's works under exceptions or limitations to copyright and related rights under applicable law. You represent you own or have obtained all necessary rights to the content you post or share. Learn more, including how to report content that you think infringes your intellectual property rights, here.

Feedback

**Help Center**

- **You can't use a domain name or URL in your username without our prior written consent.**

- **You can't do, or attempt to do, anything to circumvent, by-pass, or override any technological measures that control or limit access to the Service or data.**

**4.3 Permissions You Give to Us.** As part of our agreement, you also give us permissions that we need to provide the Service.

- **We do not claim ownership of your content, but you grant us a license to use it.**
  Nothing is changing about your rights in your content. We do not claim ownership of your content that you post on or through the Service and you are free to share your content with anyone else, wherever you want. However, we need certain legal permissions from you (known as a "license") to provide the Service. When you share, post, or upload content that is covered by intellectual property rights (like photos or videos) on or in connection with our Service, you hereby grant to us a non-exclusive, royalty-free, transferable, sub-licensable, worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings). This license will end when your content is deleted from our systems. You can delete content individually or all at once by deleting your account. To learn more about how we use information, and how to control or delete your content, review the **Privacy Policy** and visit the Instagram Help Center.

- **Permission to use your username, profile picture, and information about your relationships and actions with accounts, ads, and sponsored content.**
  You give us permission to show your username, profile picture, and information about your actions (such as likes) or relationships (such as follows) next to or in connection with accounts, ads, offers, and other sponsored content that you follow or engage with that are displayed on Meta Products, without any compensation to you. For example, we may show that you liked a sponsored post created by a brand that has paid us to display its ads on Instagram. As with actions on other content and follows of other accounts, actions on sponsored content and follows of sponsored accounts can be seen only by people who have permission to see that content or follow. We will also respect your ad settings. You can learn more here about your ad settings.

- **You agree that we can download and install updates to the Service on your device.**

## 5. Additional Rights We Retain

- If you select a username or similar identifier for your account, we may change it if we believe it is appropriate or necessary (for example, if it infringes someone's intellectual property or impersonates another user).

- If you use content covered by intellectual property rights that we have and make available in our Service (for example, images, designs, videos, or sounds we provide that you add to content you create or share), we retain all rights to our content (but not yours).

- You can only use our intellectual property and trademarks or similar marks as expressly permitted by our **Brand Guidelines** or with our prior written permission.

- You must obtain written permission from us or under an open source license to modify, create derivative works of, decompile, or otherwise attempt to extract source code from us.

## 6. Content Removal and Disabling or Terminating Your Account

jurisdictions to combat misinformation. When content has been rated by fact-checkers, we may add a notice to provide additional context. You can find more information about fact-checking here. We can refuse to provide or stop providing all or part of the Service to you (including terminating or disabling your access to the Meta Products and Meta Company Products) immediately to protect our community or services, or if you create risk or legal exposure for us, violate these Terms of Use or our policies (including our Community Standards), if you repeatedly infringe other people's intellectual property rights, or where we are permitted or required to do so by law. We can also terminate or change the Service, remove or block content or information shared on our Service, or stop providing all or part of the Service if we determine that doing so is reasonably necessary to avoid or mitigate adverse legal or regulatory impacts on us. If you believe your account has been terminated in error, or you want to disable or permanently delete your account, consult our **Help Center**. When you request to delete content or your account, the deletion process will automatically begin no more than 30 days after your request. It may take up to 90 days to delete content after the deletion process begins. While the deletion process for such content is being undertaken, the content is no longer visible to other users, but remains subject to these Terms of Use and our **Privacy Policy**. After the content is deleted, it may take us up to another 90 days to remove it from backups and disaster recovery systems.

- Content will not be deleted within 90 days of the account deletion or content deletion process beginning in the following situations:

    - where your content has been used by others in accordance with this license and they have not deleted it (in which case this license will continue to apply until that content is deleted); or

    - where deletion within 90 days is not possible due to technical limitations of our systems, in which case, we will complete the deletion as soon as technically feasible; or

    - where deletion would restrict our ability to:

        - investigate or identify illegal activity or violations of our terms and policies (for example, to identify or investigate misuse of our products or systems);

        - protect the safety and security of our products, systems, and users;

        - comply with a legal obligation, such as the preservation of evidence; or

        - comply with a request of a judicial or administrative authority, law enforcement, or a government agency;

    - in which case, the content will be retained for no longer than is necessary for the purposes for which it has been retained (the exact duration will vary on a case-by-case basis).

- If you delete or we disable your account, and you stop accessing or using Instagram, or if this contract is otherwise terminated, then these Terms shall terminate as an agreement between you and us, but this section, the section above called "Your Commitments," and the section below called "Our Agreement and What Happens if We Disagree" will still apply even after your account is terminated, disabled, or deleted, or this contract is otherwise terminated.

## 7. Our Agreement and What Happens if We Disagree

### 7.1 Our Agreement.

⊙ **Help Center**

additional terms that will also become a part of our agreement. For example, if you use payment features, you will be asked to agree to the **Community Payment Terms.** If you use Avatars, then the Avatar Terms also apply. If you use our AI products and features, the Meta AI Terms also apply. If any of those terms conflict with this agreement, those other terms will govern.

- If any aspect of this agreement is unenforceable, the rest will remain in effect.

- Any amendment or waiver to our agreement must be in writing and signed by us. If we fail to enforce any aspect of this agreement, it will not be a waiver.

- We reserve all rights not expressly granted to you.

### 7.2 Who Has Rights Under this Agreement.

- Our past, present, and future affiliates and agents, including Instagram LLC, can invoke our rights under this agreement in the event they become involved in a dispute. Otherwise, this agreement does not give rights to any third parties.

- You cannot transfer your rights or obligations under this agreement without our consent.

- Our rights and obligations can be assigned to others. For example, this could occur if our ownership changes (as in a merger, acquisition, or sale of assets) or by law.

### 7.3 Who Is Responsible if Something Happens.

- Our Service is provided "as is," and we can't guarantee it will be safe and secure or will work perfectly all the time. TO THE EXTENT PERMITTED BY LAW, WE ALSO DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT.

- We also don't control what people and others do or say, and we aren't responsible for their (or your) actions or conduct (whether online or offline) or content (including unlawful or objectionable content). We also aren't responsible for services and features offered by other people or companies, even if you access them through our Service.

- Our responsibility for anything that happens on the Service (also called "liability") is limited as much as the law will allow. If there is an issue with our Service, we can't know what all the possible impacts might be. You agree that we won't be responsible ("liable") for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms, even if we know they are possible. This includes when we delete your content, information, or account. Our aggregate liability arising out of or relating to these Terms will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

- You agree to defend (at our request), indemnify and hold us harmless from and against any claims, liabilities, damages, losses, and expenses, including without limitation, reasonable attorney's fees and costs, arising out of or in any way connected with these Terms or your use of the Service. You will cooperate as required by us in the defense of any claim. We reserve the right to assume the exclusive defense and control of any matter subject to indemnification by you, and you will not in any event settle any claim without our prior written consent.

### 7.4 How We Will Handle Disputes.

- Except as provided below, **you and we agree that any cause of action, legal claim, or dispute between you and us arising out of or related to these Terms or Instagram ("claim(s)") must be resolved by arbitration on an individual basis. Class actions and class arbitrations are not permitted;** you and we may bring a claim only on your own behalf and cannot seek relief that would affect other Instagram users. If there is a final

remain subject to this provision.

- Instead of using arbitration, you or we can bring claims in your local "small claims" court, if the rules of that court will allow it. If you don't bring your claims in small claims court (or if you or we appeal a small claims court judgment to a court of general jurisdiction), then the claims must be resolved by binding, individual arbitration. The American Arbitration Association will administer all arbitrations under its Consumer Arbitration Rules. **You and we expressly waive a trial by jury.**

  The following claims don't have to be arbitrated and may be brought in court: disputes related to intellectual property (like copyrights and trademarks), violations of our Platform Policy, or efforts to interfere with the Service or engage with the Service in unauthorized ways (for example, automated ways). In addition, issues relating to the scope and enforceability of the arbitration provision are for a court to decide.

  This arbitration provision is governed by the Federal Arbitration Act.

  You can opt out of this provision within 30 days of the date that you agreed to these Terms. To opt out, you must send your name, residence address, username, email address or phone number you use for your Instagram account, and a clear statement that you want to opt out of this arbitration agreement, and you must send them here: Meta Platforms, Inc. ATTN: Instagram Arbitration Opt-out, 1601 Willow Rd., Menlo Park, CA 94025.

- Before you commence arbitration of a claim, you must provide us with a written Notice of Dispute that includes your name, residence address, username, email address or phone number you use for your Instagram account, a detailed description of the dispute, and the relief you seek. Any Notice of Dispute you send to us should be mailed to Meta Platforms, Inc., ATTN: Instagram Arbitration Filing, 1601 Willow Rd. Menlo Park, CA 94025. Before we commence arbitration, we will send you a Notice of Dispute to the email address you use with your Instagram account, or other appropriate means. If we are unable to resolve a dispute within thirty (30) days after the Notice of Dispute is received, you or we may commence arbitration.

- We will pay all arbitration filing fees, administration and hearing costs, and arbitrator fees for any arbitration we bring or if your claims seek less than $75,000 and you timely provided us with a Notice of Dispute. For all other claims, the costs and fees of arbitration shall be allocated in accordance with the arbitration provider's rules, including rules regarding frivolous or improper claims.

- For any claim that is not arbitrated or resolved in small claims court, you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

- The laws of the State of California, to the extent not preempted by or inconsistent with federal law, will govern these Terms and any claim, without regard to conflict of law provisions.

**7.5 Unsolicited Material.**

We always appreciate feedback or other suggestions, but may use them without any restrictions or obligation to compensate you for them, and are under no obligation to keep them confidential.

## 8. Updating These Terms

We may change our Service and policies, and we may need to make changes to these Terms so that they accurately reflect our Service and policies. Unless otherwise required by law, we will notify you (for example, through our Service) before we make changes to these Terms and give you an opportunity to review them before they go into effect. Then, if you continue to access or

Help Center

Was this helpful?

Yes                                                    No

## Related Articles

Information for law enforcement

Intellectual Property

Why we added more information to our Terms

Why your account has been restricted for data scraping and what can you do

How long does copyright protection last?

More information about Standard Contractual Clauses

**English (US)**

About Us

API

Jobs

Terms

Privacy

from ⨉ Meta                                                    © 2025 M

Feedback