# Exhibit 3



No. S244508
Vancouver Registry

IN THE SUPREME COURT OF BRITISH COLUMBIA

BETWEEN:

IGNITE INTERNATIONAL BRANDS, LTD.

PETITIONER

AND:

INTERNATIONAL INVESTMENTS, LTD., GREGORY GILPIN-PAYNE, SCOTT ROHLEDER, ROBIN RODRIGUEZ, THOMAS BUNKER and RALPH GILPIN-PAYNE

RESPONDENTS

## AMENDED PETITION TO THE COURT

ON NOTICE TO:

INTERNATIONAL INVESTMENTS, LTD.
858 Zenway Blvd.
Basterre, St. Kitts

GREGORY GILPIN-PAYNE
Evergreen Street
McKinnons St John's
Antigua and Barbuda

SCOTT ROHLEDER
2820 W Fountain Road
Tampa, Floria, 33609
USA

ROBIN RODRIGUEZ
c/o 25th Floor
700 West Georgia St
Vancouver, BC  V7Y 1B3

THOMAS BUNKER
c/o 25th Floor
700 West Georgia St
Vancouver, BC  V7Y 1B3

RALPH GILPIN-PAYNE
c/o 25th Floor

{FLG-00646770;3}

2

700 West Georgia St
Vancouver, BC  V7Y 1B3

The address of the registry is:  800 Smithe Street
Vancouver, BC
V6Z 2E1

The petitioner estimates that the hearing of the petition will take 2 hours.

☒        This matter is not an application for judicial review.

**This proceeding is brought for the relief set out in Part 1 by**

☒        the person named as petitioner in the style of proceedings above.

If you intend to respond to this petition, you or your lawyer must

(a)        File a response to petition in Form 67 in the above-named registry of this court within the time for response to petition described below, and

(b)        Serve on the petitioner(s)

(i)        2 copies of the filed response to petition, and

(ii)        2 copies of each filed affidavit on which you intend to rely at the hearing.

**Orders, including orders granting relief claimed, may be made against you, without any further notice to you, if you fail to file the response to petition within the time for response.**

**Time for response petition**

A response to petition must be filed and served on the petitioner,

(a)        If you were served with the petition anywhere in Canada, within 21 days after that service,

(b)        If you were served with the petition anywhere in the United States of America, within 35 days after that service,

(c)        If you were served with the petition anywhere else, within 49 days after that service, or

(d)        If the time for response has been set by order of the court, within that time.

| (1) | The ADDRESS FOR SERVICE of the petitioner is:<br><br>Seva Batkin and Thomas Clifford<br>**Fraser Litigation Group** |
|-----|---|

3

|  | 1100 – 570 Granville Street<br>Vancouver, B.C. V6C 3P1<br>Attn: Seva Batkin and Thomas Clifford<br><br>Fax number for service (if any) of the petitioner: N/A<br><br>E-mail address for service (if any) of the petitioner: sbatkin@fraserlitigation.com and tclifford@fraserlitigation.com |
|---|---|
| (2) | The name and office address of the petitioner's (s') lawyer is:<br><br>Seva Batkin and Thomas Clifford<br>**Fraser Litigation Group**<br>1100 – 570 Granville Street<br>Vancouver, B.C. V6C 3P1 |

## CLAIM OF THE PETITIONER(S)

**Part 1: ORDER(S) SOUGHT**

1.    A declaration that the purported termination of Dan Bilzerian as the director and Chairman of the Petitioner on or about June 2, 2024 (the "**Purported Termination**") is of no force and effect.

2.    A declaration that the purported appointment of the individual respondents, GREGORY GILPIN-PAYNE, SCOTT ROHLEDER, ROBIN RODRIGUEZ, THOMAS BUNKER and RALPH GILPIN-PAYNE (the "**Individual Respondents**"), as directors of the Petitioner on or about June 2, 2024 (the "**Purported Appointment**") is of no force and effect.

3.    A declaration that Dan Bilzerian is entitled to be reflected in the Petitioner's register of directors as the sole director of the Petitioner, pursuant to ss. 228, 229 and 230 of the *Business Corporations Act*, S.B.C. 2002, c. 57 (the "***Act***").

4.    A declaration that Mr. Bilzerian, as sole director of the Petitioner, is entitled to exercise all powers of management and control over the Petitioner, except as restricted by the *Act* or the articles of the Petitioner.

5.    A declaration that any steps taken by or on behalf of the Individual Respondents further to the Purported Appointment as purported directors of the Company are of no force and effect, and an order setting aside all such steps.

6.    A declaration that the respondent SCOTT ROHLEDER is not an officer of the Petitioner or, in the alternative, that SCOTT ROHLEDER is not a President or CEO of the Petitioner.

{FLG-00646770;3}

4

7.    A declaration that any steps taken by or on behalf of Mr. Rohleder as the CEO or President of the Company since June 11, 2024, are of no force and effect, and an order setting aside all such steps.

8.    A declaration that the Notice of Annual General Meeting dated June 21, 2024 (the "**Purported AGM Notice**"), purporting to schedule an Annual General Meeting of the Petitioner for July 11, 2024, at 6 PM EST (the "**Purported AGM**"), is of no force and effect.

9.    An interim, interlocutory, and permanent injunctions:

(a)    restraining the Individual Respondents, and each of them, from, directly or indirectly, holding themselves out or taking any steps as directors or officers of, or as being otherwise authorized to act on behalf of or with respect to the affairs of the Company, including dealing in any way with the Company's business or assets;

(b)    restraining the Individual Respondents from holding the Purported AGM;

(c)    restraining the Individual Respondents from communicating with employees of the Company or engaging in any and all actions that undermine or may have the effect of undermining or doubting the position of Mr. Bilzerian as the sole director and Chairman of the Company; and

(d)    requiring the Individual Respondents to immediately provide to Mr. Bilzerian any and all books, records and information of the Company in their possession or control, including all access information and passwords for the Company's bank accounts, websites, social media accounts, e-mail accounts, and employee communication channels, customer and supplier accounts, and restore complete and exclusive control of the Company to Mr. Bilzerian.

10.    An order that the notice and service requirements for this Petition and its supporting affidavit as set forth in the *Supreme Court Civil Rules*, be waived and/or abridged.

11.    Special costs.

12.    Such other relief as this Honourable Court deems just and appropriate.

**Part 2: FACTUAL BASIS**

I.    INTRODUCTION

13.    The petitioner, Ignite International Brands, Ltd. (the "**Company**"), is incorporated under and subject to the British Columbia *Business Corporations Act*, S.B.C. 2002, c. 57 (the "*Act*").

14.    This petition concerns a blatantly illegal corporate raid by which the Individual Respondents, acting on behalf of the respondent shareholder of the Company, International Investments,

Ltd. ("**IIL**"), purported to "terminate" the sole director and Chairman of the Company, Dan Bilzerian ("**Mr. Bilzerian**"), purported to install themselves as directors of the Company, purported to schedule an AGM for July 11, 2024, have taken over control of the Company, including its bank accounts, and locked out Mr. Bilzerian.

15. Since January 2, 2019, Dan Bilzerian has been a director and Chairman of the Company.

16. Until January 17, 2024, the respondents, Gregory Gilpin-Payne, Mr. Rodriguez, Mr. Bunker and Ralph Gilpin-Payne, were directors of the Company along with Mr. Bilzerian, and the respondent Mr. Rohleder was the CEO of the Company.

17. On January 17, 2024, Mr. Bilzerian became the sole director and Chairman of the Company, and Mr. Rohleder remained the CEO.

18. On June 1, 2024, Gregory Gilpin-Payne, purporting to write on behalf of IIL and other shareholders of the company "representing" 51.8% of the shares of the Company, demanded that Mr. Bilzerian resign as the Company's sole director and Chairman.

19. Mr. Bilzerian refused and, on June 2, 2024, Gregory Gilpin-Payne, again purporting to write on behalf of the same shareholders, purported to terminate Mr. Bilzerian as the sole director and Chairman and stated that a "new Board of Directors is being formed".  The purported termination was not in compliance with the *Act* and the articles and is of no force and effect.

20. On June 3, 2024, the Individual Respondents asserted that they were appointed as directors of the Company.  The purported appointments were not in compliance with the *Act* and the articles and are of no force and effect.

21. On June 11, 2024, Mr. Bilzerian, as the sole director of the Company, terminated Mr. Rohleder as the CEO of the Company for cause as a result of insubordinate conduct, including participation in efforts to remove Mr. Bilzerian as the director and install himself as a director.

22. On June 21, 2024, Mr. Rohleder sent an email to the Company shareholders purporting to schedule an AGM for July 8, 2024, "by the order of the board of directors". This AGM was not scheduled in compliance with the Act and the articles, including because Mr. Bilzerian is the sole director of the Company and has not called the AGM, and is of no force in effect.

23. Mr. Rohleder, along with the other Individual Respondents, have usurped control of the Company from the Company's lawful director, Mr. Bilzerian.  They control the Company's bank accounts, instruct the Company's employees, and have instructed employees not to communicate with and recognize the authority of Mr. Bilzerian.

24. In this Petition, the Company seeks declarations that the acts of the Individual Respondents are of no force and effect, and orders setting aside any steps taken by the Individual Respondents and restoring control of the Company to its sole lawful director, Mr. Bilzerian.

6

## II.    THE PETITIONER COMPANY

25.    The Company is a lifestyle brand selling disposable vapes, spirits, and apparel under the "Ignite" brand, which was founded by Mr. Bilzerian in 2017. That brand, including the related intellectual property, were controlled by Vulcan Enterprises Ltd. ("**Vulcan**"), a company in which Mr. Bilzerian was a majority shareholder.

26.    The Company was incorporated on February 25, 1985, as Info-Stop Communications Inc.

27.    After its incorporation, the Company became a junior mineral exploration company focused on gold projects in B.C.

28.    From 1991 to 1999, the Company was listed on the Vancouver Stock Exchange and, in August, 2013, it became listed the TSX Venture exchange (the "**TSX**") under the trading symbol "ALQ".

29.    On September 19, 2016, the Company voluntarily delisted from the TSX and became listed on the Canadian Securities Exchange ("**CSE**") under the same trading symbol.

30.    On August 25, 2017, trading of the Company's shares was halted as the Company made an application to the CSE of its intention to change its business focus from being a mineral resource exploration company to an investment company seeking investment opportunities in the global cannabis sector.

31.    On December 21, 2017, the Company announced it had entered into a binding agreement letter of intent with Vulcan to acquire certain intellectual property rights for use of the name, approved photographs, approved images, voice, and approved likenesses of Dan Bilzerian exclusively within the cannabis industry worldwide (collectively, "**Licensed IP**"), which included cannabis brand logos or related marks, including "Burn by Bilzerian" and "Ignite by Bilzerian".

32.    In 2018, the Company announced a multi-step reverse take-over transaction with Vulcan Enterprises US Ltd., which had changed its name to Ignite International. Ltd. ("**Ignite US**"), and two of its shareholders, including Mr. Bilzerian (the "**RTO**").

33.    On October 30, 2018, the Company changed its name to Green Axis Capital Corp. and changed its stock symbol to "BILZ".

34.    Further to the RTO, on January 2, 2019, the Company replaced its board of directors and, among other appointments, Mr. Bilzerian was appointed as a director, Chairman, and CEO. Mr. Bilzerian has been a director and Chairman of the Company since that date. This is reflected in the Company's Directors and Officers Register (the "**Register of Directors**").[1]

---

[1] Bilzerian #1, Ex E

{FLG-00646770;3}

7

35.    On January 10, 2019, the Company changed its name to Ignite International Brands, Ltd.

36.    On May 30, 2019, the Company completed the RTO by, *inter alia,* acquiring all shares of and combining with Ignite US, Ignite International Brands, Ltd., 1203238 B.C. Ltd., and 1203243 B.C. Ltd. It thus changed its business focus from being an investment company to being a vertically-integrated company operating in the cannabis industry.

37.    On August 24, 2022, at a special meeting of the shareholders, the shareholders approved a going private transaction, as well as set the number of directors to 5.  Mr. Bilzerian remained a director and Chairman of the Company.  The going private transaction was completed by August 29, 2022.

III.    THE ARTICLES OF THE COMPANY

38.    The articles of the Company (the "**Articles**")[2] include the following material provisions:

(a)    the majority of votes required for the Company to pass a special resolution at a general meeting of shareholders is two-thirds (66.66%) of the votes cast:

> 1.1    In these Articles, unless the context otherwise requires:
>
> ...
>
> (h) **"special majority"** means the majority of votes described in § 11.2 which is required to pass a special resolution.

> **Special Majority**
>
> 11.2    The majority of votes required for the Company to pass a special resolution at a general meeting of shareholders is two-thirds of the votes cast on the resolution.

(b)    a director ceases to be a director when the term of office of the director expires, the director dies, the director resigns as a director, or the director is removed from office before the expiration of the director's term of office (i) by the Company by a special resolution, or (ii) by the directors if the director is convicted of an indictable offence, or the director ceases to be qualified to act as a director of a company and does not promptly resign:

> **Ceasing to be a Director**
>
> 14.9    A director ceases to be a director when:
>
> (a) the term of office of the director expires;
>
> (b) the director dies;
>
> (c) the director resigns as a director by notice in writing provided to the Company or a lawyer for the Company; or

---

[2] Bilzerian #1, Ex B

{FLG-00646770;3}

8

(d) the director is removed from office pursuant to §14.10 or §14.11

### Removal of Director by Shareholders

14.10   The Company may remove any director before the expiration of his or her term of office by special resolution. In that event, the shareholders may elect, or appoint by ordinary resolution, a director to fill the resulting vacancy. If the shareholders do not elect or appoint a director to fill the resulting vacancy contemporaneously with the removal, then the directors may appoint or the shareholders may elect, or appoint by ordinary resolution, a director to fill that vacancy.

### Removal of Director by Directors

14.11   The directors may remove any director before the expiration of his or her term of the if the director is convicted of an indictable offence, or if the director ceases to be qualified to act as a director of a company and does not promptly resign, and the directors may appoint a director to fill the resulting vacancy.

(c)     only directors nominated at an annual general meeting ("**AGM**") or a special general meeting ("**SGM**") in accordance with the detailed procedures set out in §14.12 may be elected as directors:

### Nomination of Directors

**14.12**

(a)     Subject only to the Act, only persons who are nominated in accordance with the following procedures shall be eligible for election as directors of the Company. Nominations of persons for election to the board may be made at any annual meeting of shareholders, or at any special meeting of shareholders (but only if the election of directors is a matter specified in the notice of meeting given by or at the direction of the person calling such special meeting):

(i) by or at the direction of the board or an authorized officer of the Company, including pursuant to a notice of meeting;

(ii) by or at the direction or request of one or more shareholders pursuant 10 a proposal made in accordance with the provisions of the Act or a requisition of the shareholder made in accordance with the provisions of the Act; or

(iii) by any person (a "**Nominating Shareholder**") (A) who, at the close of business on the date of the giving of the notice provided for below in this §14.12 and on

{FLG-00646770;3}

9

the record date for notice of such meeting, is entered in the securities register as a holder of one or more shares carrying the right to vote at such meeting or who beneficially owns shares that are entitled to be voted at such meeting and (B) who complies with the notice procedures set forth below in §14.12.

(b) In addition to any other applicable requirements, for a nomination to be made by a Nominating Shareholder, such person must have given (i) timely notice thereof in proper written form to the Corporate Secretary of the Company at the principal executive offices of the Company in accordance with this §14.12 and (ii) the representation and agreement with respect to each candidate for nomination as required by, and within the time period specified in §14.12(e).

…

(e)    To be eligible to be a candidate for election as a director of the Company and to be duly nominated, a candidate must be nominated in the manner prescribed in this §14.12 and the candidate for nomination, whether nominated by the board or otherwise, must have previously delivered to the Corporate Secretary of the Company at the principal executive offices of the Company, not less than 5 days prior to the date of the Meeting of Shareholders, a written representation and agreement …

(f)    No person shall be eligible for election as a director of the Company unless nominated in accordance with the provisions of this §14.12; provided, however, that nothing in this §14.12 shall be deemed to preclude discussion by a shareholder (as distinct from nominating directors) at a meeting of shareholders of any matter in respect of which it would have been entitled to submit a proposal pursuant to the provisions of the Act. The chair of the meeting shall have the power and duty to determine whether a nomination was made in accordance with the procedures set forth in the foregoing provisions and, if any proposed nomination is not in compliance with such foregoing provisions. to declare that such defective nomination shall be disregarded

(d)    the number of directors of the Company is the most recently set by a director's resolution or the number of directors in office, and shareholders may only elect or appoint directors needed to fill vacancies up to that number:

### First Directors; Number of Directors

10

13.1    … The number of directors, excluding additional directors appointed under §14.8, is set at:

(c) if the Company is not a public company, the most recently set of:

(i) the number of directors set by a resolution of the directors (whether or not previous notice of the resolution was given); and

(ii) the number of directors in office pursuant to §14.4.

**Change in Number of Directors**

13.2    If the number of directors is set under §13.1(b)(i) or §13.1(c)(i):

(a) the shareholders may elect or appoint the directors needed to fill any vacancies in the board of directors up to that number; or

(b) if the shareholders do not elect or appoint the directors needed to fill any vacancies in the board of directors up to that number then the directors, subject to §14.8, may appoint directors to fill those vacancies.

**Places of Retiring Directors Not Filled**

14.4    If at any meeting of shareholders at which there should be an election of directors, the places of any of the retiring directors are not filled by that election, those retiring directors who are not re-elected and who are asked by the newly elected directors to continue in office will, if willing to do so, continue in office to complete the number of directors for the time being set pursuant to these Articles but their term of office shall expire when new directors are elected at a meeting of shareholders convened for that purpose. If any such election or continuance of directors does not result in the election or continuance of the number of directors for the time being set pursuant to these Articles, the number of directors of the Company is deemed be set at the number of directors actually elected or continued in office.

**Shareholders May Fill Vacancies**

14.7    If the Company has no directors or fewer directors in office than the number set pursuant to these Articles as the quorum of directors, the shareholders may elect or appoint directors to fill any vacancies on the board of directors.

**Additional Directors**

14.8 Notwithstanding §13.1 and §13.2, between annual general meetings or by unanimous resolutions contemplated by §10.2, the directors may appoint one or more additional directors, but the

{FLG-00646770;3}

11

number of additional directors appointed under this §14.8 must not at any time exceed:

(a) one-third of the number of first directors, if, at the time of the appointments, one or more of the first directors have not yet completed their first term of office; or

(b) in any other case, one-third of the number of the current directors who were elected or appointed as directors other than under this §14.8.

Any director so appointed ceases to hold office immediately before the next election or appointment of directors under§ 14.1 (a), but is eligible for re-election or re-appointment.

(e)    the directors must, subject to the *Act* and the Articles, manage or supervise the management of the business and affairs of the Company and have the authority to exercise all such powers of the Company as are not, by the *Act* or by the Articles, required to be exercised by the shareholders of the Company:

**Powers of Management**

16.1    The directors must, subject to the Act and these Articles, manage or supervise the management of the business and affairs of the Company and have the authority to exercise all such powers of the Company as are not, by the Act or by these Articles, required to be exercised by the shareholders of the Company. Notwithstanding the generality of the foregoing, the directors may set the remuneration of the auditor of the Company.

(f)    the directors may, from time to time, appoint and terminate officers at any time, as well as determine and revoke functions duties, and powers of an officer:

**Directors May Appoint Officers**

20.1    The directors may, from time to time, appoint such officers, if any, as the directors determine and the directors may, at any time, terminate any such appointment.

**Functions, Duties and Powers of Officers**

20.2    The directors may, for each officer:

(a) determine the functions and duties of the officer;

(b) entrust to and confer on the officer any of the powers exercisable by the directors on such terms and conditions and with such restrictions as the directors think fit; and

(c) revoke, withdraw, alter or vary all or any of the functions, duties and powers of the officer.

12

## IV.    MR. BILZERIAN IS THE SOLE DIRECTOR OF THE COMPANY

39.    As of December 29, 2023, the directors of the Company were Mr. Bilzerian, Greg Gilpin-Payne, Ralph Gilpin-Payne, Mr. Bunker, Mr. Rodriguez, and Lester Lee ("**Mr. Lee**").

40.    By a written agreement dated December 29, 2023,[3] between the Company, Greg Gilpin-Payne, on behalf of certain shareholders of the Company said to be majority shareholders holding in the aggregate 164,958,753 shares of the Company, and Mr. Bilzerian, the parties agreed, *inter alia,* as follows:

    (a)    promptly after the execution of the Agreement, all of the directors of the Company, other than Mr. Bilzerian, would resign as directors:

        1.    Board Composition. Promptly following the execution of this letter agreement, all of the directors of the Company, other than the Chairman, (the **"Resigning Directors"**) will resign from the board of directors of the Company (the **"Board"**). The Company hereby acknowledges that each of the Resigning Directors will have their options vest upon submission of their letter of resignation to the Board.

    (b)    an AGM would be held on January 18, 2024, the number of directors would be set at one, and Mr. Bilzerian would be the sole nominee; and

        2.    Annual Meeting. The annual meeting of shareholders of the Company will be held on January 18, 2024. A new information circular will be created and distributed that sets the number of directors to be elected at the annual meeting at one, with the Chairman as the sole nominee.

    (c)    Mr. Bilzerian and the other shareholders party to the Agreement would vote all of the shares of the Company over which they had control or direction to implement the Agreement at the AGM or by written resolution:

        4.    Majority Shareholders. Each of the Chairman and the "Majority Shareholders" agree to vote the all shares of the Company (the "**Shares**") for which they have beneficial ownership, or over which they have control or direction, in order to ensure the implementation of this letter agreement at the annual meeting of shareholders or by written resolution.

41.    IIL, which is a company under the control of Mr. Bilzerian's father, Paul Bilzerian, was one of the shareholders of the Company on whose behalf Greg Gilpin-Payne entered into the Agreement.

---

[3] Bilzerian #1, Ex J

13

42.    On January 17, 2024, in accordance with the Agreement, Greg Gilpin-Payne, Ralph Gilpin-Payne, Mr. Bunker, Mr. Rodriguez, and Mr. Lee ceased being directors of the Company, and Mr. Bilzerian became the sole director and Chairman of the Company.  This is reflected in, *inter alia,* the Register of Directors and in the Notice of Change of Directors filed with the BC Corporate Registry on February 16, 2024.[4]

43.    Mr. Rohleder continued as the CEO of the Company.

44.    None of the above facts appear to be in dispute, including the fundamental fact that, as of January 17, 2024, Mr. Bilzerian became the sole director and Chairman of the Company.

## V.    ILLEGAL CORPORATE RAID BY THE RESPONDENTS

45.    On June 1, 2024, in a letter[5] written on the letterhead of IIL and signed by Greg Gilpin-Payne, purporting to write on behalf of certain Ignite shareholders "representing" 51.8% of the shares of the Company, Greg Gilpin-Payne demanded that Mr. Bilzerian resign as the Company's director and Chairman by June 3, 2024 (the "**Resignation Demand**").

46.    Mr. Bilzerian did not agree to resign in response to the Resignation Demand and did not resign as a director or Chairman of the company.

47.    The Company does not agree that the shareholders of the Company that Greg Gilpin-Payne listed in his letter represent 51.8% of the shares of the Company.  As far as it is known, these shareholders hold less than 50% of the shares of the Company.

48.    After Mr. Bilzerian refused to resign, on June 2, 2024, Greg Gilpin-Payne sent Mr. Bilzerian a letter,[6] again purporting to write "based on the authority and consent provided to [him] by the majority of Ignite shareholders … representing 51.8% of the shares" of the Company, claimed to "terminate" Mr. Bilzerian as the director and Chairman of the Company (the "**Purported Termination**"), and asserted that a "new Board of Directors is being formed which will be announced shortly."

49.    The Purported Termination did not comply with the *Act* and the Articles and therefore, was of no force and effect and, on June 3, 2024, Mr. Bilzerian responded to Greg Gilpin-Payne to advise him of same.[7]

50.    On June 4, 2024, Mr. Bilzerian's legal counsel, Norton Rose Fulbright Canada, LLP ("**Norton Rose**"), sent a letter to IIL[8] confirming that the Purported Termination was not compliant with applicable law and therefore of no force and effect, and warned that no further steps should

---

[4] Bilzerian #1, Ex E, K
[5] Bilzerian #1, Ex M
[6] Bilzerian #1, Ex N
[7] Bilzerian #1, Ex N
[8] Bilzerian #1, Ex P

be taken that would undermine Mr. Bilzerian in his position as director and Chairman, including communications with employees of the Company.

51.     On June 5, 2024, Greg Gilpin-Payne sent an email to Norton Rose attaching a letter of that date.[9] The email included an email exchange between Paul Bilzerian and Greg Gilpin-Payne, which indicates that Paul Bilzerian drafted this letter and instructed Greg Gilpin-Payne to send it. This letter asserted that, by IIL's letter dated June 2, 2024, which was called a "notice of termination", Mr. Bilzerian had been properly terminated as Chairman of the Company.

52.     On or about June 7, 2024, an employee of the Company sent Mr. Bilzerian a photo of an internal news release distributed by Mr. Rohleder to the employees of the company, titled "Ignite Announces Appointment of Directors", wherein it was asserted that the Individual Respondents had been appointed as the directors of the Company (the "**Purported Appointment**"), and described Mr. Bilzerian as a "former director".[10]

53.     The Purported Appointment did not comply with the *Act* and the Articles and therefore, was of no force and effect.

54.     On June 11, 2024, Norton Rose wrote a further letter to Greg Gilpin-Payne:[11]

(a)     confirming that the Purported Termination was improper and of no effect, and Mr. Bilzerian remained both the Chairman and sole director of the Company;

(b)     confirming the Purported Appointment was improper and of no force or effect; and

(c)     advising that, as the result of Mr. Rohleder's refusal to comply with the director's (Mr. Bilzerian's) instructions, and his participation in the unlawful efforts to remove Mr. Bilzerian as the sole director and Chairman and install himself as a director, Mr. Rohleder was terminated for cause.

55.     On June 21, 2024, Mr. Rohleder sent an email, purportedly to the Company's shareholders, attaching a "Notice of Annual General Meeting" purporting to schedule an AGM of the Company for July 11, 2024, at 6 PM EST "by order of the board of directors" (the "**Purported AGM Notice**").[12]

56.     Mr. Bilzerian is the sole director of the Company. He did not order an AGM to be held and did not authorize the issuance of the Purported AGM Notice. He has received no requisition from any shareholder of the Company asking for an AGM to be held, nor has any purported directors' resolution been provided.

---

[9] Bilzerian #1, Ex Q

[10] Bilzerian #1, Ex R

[11] Bilzerian #1, Ex S

[12] Bilzerian #1, Ex T

{FLG-00646770;3}

15

57.    The Purported AGM Notice, and the delivery of same, did not comply with the *Act* and the Articles and therefore, was of no force and effect.

58.    Despite his termination as the CEO of the Company, and to the exclusion of Mr. Bilzerian, Mr. Rohleder and the other individual defendants, based on the Purported Appointment, control the Company's bank accounts and operations, instruct the Company's employees, and otherwise act or purport to act on behalf of the Company.

59.    On July 4, 2024, the Company, through its legal counsel, sent a letter[13] to the respondents demanding that, by July 8, 2024 (the "**Demands**"):

    (a)    Mr. Rohleder send an email to all shareholders to whom he had sent the Purported AGM Notice, advising that the Purported AGM Notice was sent in error and no AGM would occur on that date;

    (b)    the individual defendants, and any and all other representatives of or persons associated with IIL and other shareholders who purported to remove Mr. Bilzerian as a director and Chairman of the Company:

        (i)    cease and desist any and all communications, including communications with employees of the Company, and any and all other actions that undermine or may have the effect of undermining or doubting the position of Mr. Bilzerian as the sole director and Chairman of the Company;

        (ii)    issue public statements confirming that Mr. Bilzerian is the director and Chairman of the Company; and

        (iii)    rescind and unwind any steps or actions purportedly taken by the Company under the putative control of Greg Gilpin-Payne, Ralph Gilpin-Payne, Mr. Rohleder, Mr. Rodriguez, and Mr. Bunker; and

    (c)    Mr. Rohleder provide to Mr. Bilzerian any and all books, records and information of the Company in his possession or control, including all access information and passwords for the Company's bank accounts, website, social media accounts, e-mail accounts and employee communication channels, customer and supplier accounts, and restore complete and exclusive control of the Company to Mr. Bilzerian.

60.    The defendants have failed and/or refused to comply with the Demands and, in particular, continue to assert that Mr. Bilzerian has been terminated as the sole director and Chairman of the Company, and maintain that the individual defendants have been appointed as the directors of the Company.

**Part 3: LEGAL BASIS**

---

[13] Bilzerian #1, Ex U

{FLG-00646770;3}

16

61.    It is not in dispute that, as of January 17, 2024:

(a)    Greg Gilpin-Payne, Ralph Gilpin-Payne, Mr. Bunker, Mr. Rodriguez, and Mr. Lee ceased being directors of the Company;

(b)    Mr. Bilzerian remained as the sole director and Chairman of the Company;

(c)    the number of directors of the Company was set to one; and

(d)    Mr. Rohleder remained as the CEO of the Company.

I.    THE PURPORTED TERMINATION IS OF NO FORCE AND EFFECT

62.    Section 128 of the *Act*, reproduced below, and §14.9 and 14.10 of the Articles, reproduced above at ¶38, provide that, unless a director resigns, the shareholders can *only* remove a director before the director's term of office expires by a special resolution by a special resolution approved by the special majority of 2/3 of the votes cast on the special resolution at a general meeting, providing that proper notice has been given of the resolution:

**When directors cease to hold office**

128 (1) A director ceases to hold office when

(a) the term of office of that director expires in accordance with

(i) this Act or the memorandum or articles, or

(ii) the terms of the director's election or appointment,

(b) the director dies or resigns, or

(c) the director is removed in accordance with subsection (3) or (4).

...

(3) Subject to subsection (4), a company may remove a director before the expiration of the director's term of office

(a) by a special resolution, or

(b) if the memorandum or articles provide that a director may be removed by a resolution of the shareholders entitled to vote at general meetings passed by less than a special majority or may be removed by some other method, by the resolution or method specified.

(4) If the shareholders holding shares of a class or series of shares of a company have the exclusive right to elect or appoint one or more directors, a director so elected or appointed may only be removed

(a) by a special separate resolution of those shareholders, or

(b) if the memorandum or articles provide that such a director may be removed by a separate resolution of those shareholders passed by a

{FLG-00646770;3}

17

majority of votes that is less than the majority of votes required to pass a special separate resolution or may be removed by some other method, by the resolution or method specified.

**1**  (1) In this Act:

**"special resolution"** means

(a) a resolution passed at a general meeting under the following circumstances:

(i) notice of the meeting specifying the intention to propose the resolution as a special resolution is sent to all shareholders holding shares that carry the right to vote at general meetings at least the prescribed number of days before the meeting;

(ii) the majority of the votes cast by shareholders voting shares that carry the right to vote at general meetings is cast in favour of the resolution;

(iii) the majority of votes cast in favour of the resolution constitutes at least a special majority, or

(b) a resolution passed by being consented to in writing by all of the shareholders holding shares that carry the right to vote at general meetings;

63.     There is no question that the Purported Termination did not comply with the above requirements of the *Act* and the Articles and is of no force and effect.

II.     THE PURPORTED APPOINTMENT IS OF NO FORCE AND EFFECT

64.     Section 122(1) of the *Act* provides that, other than the first directors of a company, directors must be elected or appointed in accordance with the *Act* and the company's articles:

**122**  (1) Directors, other than the first directors of a company who are in their first term of office, must be elected or appointed in accordance with this Act and with the memorandum and articles of the company.

65.     Sections 130 and 131 of the *Act* provide that shareholders may only appoint a director to fill a vacancy when the director is removed pursuant to s. 128(3) by a special resolution, unless the articles of a company provide otherwise:

**Memorandum or articles may apply to vacancies among directors**

**130**  A vacancy that occurs among the directors is to be filled in accordance with sections 131 to 135 unless the memorandum or articles provide otherwise.

**Vacancies among directors**

18

**131** Subject to sections 132 and 133, a vacancy that occurs among the directors

(a) may, if the vacancy occurs as a result of the removal of a director under section 128 (3), be filled

(i) by the shareholders at the shareholders' meeting, if any, at which the director is removed, or

(ii) if not filled in the manner contemplated by subparagraph (i) of this paragraph, by the shareholders or by the remaining directors, or

(b) may, in the case of a casual vacancy, be filled by the remaining directors.

66.     §13.1, 13.2, 14.4, 14.7, 14.8, and 14.12 of the Articles, reproduced above at ¶38, further provide as follows:

(a)     only directors nominated at an AGM or an SGM in accordance with the detailed procedures set out in §14.12 may be elected as directors; and

(b)     shareholders may only elect or appoint directors needed to fill any vacancies up to the number of directors in office or set by a director's resolution.

67.     There is no question that the Purported Appointment did not comply with the above requirements of the *Act* and the Articles and is of no force and effect.

68.     Section 135 also provides a procedure for appointing a director when there is none in office:

**135** (1) If there are no directors in office,

(a) an individual may be empowered by the shareholders, incorporators or subscribers, as the case may be, under subsection (2), to

(i) call a meeting of the shareholders, incorporators or subscribers, as the case may be, for the election or appointment of directors, and

(ii) appoint as directors, to hold office until the vacancies are filled at that meeting, the number of individuals that will constitute a quorum, or

(b) there may be appointed, in the manner referred to in subsection (3), not more than the number of directors who, under the memorandum or articles, may be elected or appointed at an annual general meeting.

(2)     An individual may be empowered under subsection (1) (a) by an instrument in writing

19

> (a) signed by shareholders who, in the aggregate, hold shares carrying, in the aggregate, more than 1/2 of the votes that may be cast in an election or appointment of directors at a general meeting,
>
> ...

(3)     An appointment under subsection (1) (b) may be effected by

> (a) a unanimous resolution of the shareholders who hold shares carrying the right to vote in an election or appointment of directors at a general meeting,
>
> ...

69.     §14.7 of the Articles provides its own procedure for appointing directors in the event that there is none in office, which pursuant to s. 130, overrides the procedure in s. 135 of the *Act*. There is no question that §14.7 has not been complied with.

70.     In the alternative, it is clear that s. 135 does not apply herein.  Specifically:

(a)     Mr. Bilzerian was at all material times a director in office;

(b)     there was no individual empowered by shareholders and no meeting of shareholders was called; and

(c)     there was no unanimous shareholder resolution.

III.    THE PURPORTED AGM NOTICE IS OF NO FORCE AND EFFECT

71.     Section 167 of the *Act* allows shareholders holding at least 5% of the shares of a company to requisition a general meeting and, where a valid requisition of the shareholders has been received by the directors:

(a)     the directors of a company must call a general meeting to be held not more than 4 months after the date the requisition is received, to transact the business stated in the requisition, and send out a notice of that meeting; or

(b)     if a notice of a general meeting is not issued by the directors within 21 days of receipt, the requisitioning shareholders may send notice of a general meeting.

72.     The Purported AGM Notice did not comply with the *Act* and the Articles and was of no force and effect, including because:

(a)     general meetings must be called by the directors and Mr. Bilzerian did not call the AGM purportedly scheduled for July 11, 2024, and issue the Purported AGM Notice; and

(b)     no requisition of shareholders seeking to have the Company hold a general meeting received by the Company.

IV.    MR. BILZERIAN HAS BEEN UNLAWFULLY LOCKED OUT FROM THE COMPANY

73.    Pursuant to section 136 and 141 if the *Act,* subject to the articles of a company, directors have the power and obligation to manage the or supervise the management of the company, including the power to appoint and remove officers:

**Powers and functions of directors**

136   (1) The directors of a company must, subject to this Act, the regulations and the memorandum and articles of the company, manage or supervise the management of the business and affairs of the company.

(2) Without limiting section 146, a limitation or restriction on the powers or functions of the directors is not effective against a person who does not have knowledge of the limitation or restriction.

**Officers**

141   (1) Subject to subsection (3) and to the memorandum and articles of a company, the directors may appoint officers and may specify their duties.

...

(4) Unless the memorandum or articles provide otherwise, the directors may remove any officer.

(5) The removal of an officer is without prejudice to the officer's contractual rights or rights under law, but the appointment of an officer does not of itself create any contractual rights.

74.    The same powers are also set out in §16.1, 20.1 and 20.2 of the Articles, reproduced above at ¶38.

75.    There is no question that:

(a)    Mr. Bilzerian, as the director of the Company, must manage or supervise the management the Company;

(b)    the Individual Respondents, if they were not validly appointed as directors, have no power to manage or supervise the management of the Company;

(c)    Mr. Bilzerian, as the director of the Company, had the power to terminate Mr. Rohleder as the CEO;

(d)    once so terminated, Mr. Rohleder had no further powers as an officer and could not control or participate in the management of the Company; and

(e)    the Individual Respondents' conduct in controlling the Company and excluding Mr. Bilzerian from the control of the Company has been unlawful and contrary to the *Act* and the Articles.

21

V.    REMEDIAL POWERS UNDER SS. 228 AND 230 OF THE *ACT*

76.    The Company relies on sections 228 and 230 of the *Act*, wherein the court has broad powers to restrain conduct that in breach of the *Act* or the articles, order steps to be taken to comply with the *Act* or the articles, and order correction or affirmation of corporate records, including the Register of Directors and Officers.

77.    The object of ss. 228 and 230 is remedial in nature and these provisions are interpreted in a broad and liberal manner.  It gives the appropriate persons the ability to question before the court the contravention or possible contravention of the obligations of the company or their agents in a timely manner.

*Rogers v. Rogers Communications Inc.*, 2021 BCSC 2184 ¶242

*D&G Developments Ltd. v Crystal Cove Beach Resorts Inc.*, 2006 BCSC 1432 ¶28-38

78.    Under s. 228 of the *Act*, on an application by, among others, any person whom the court considers to be an appropriate person, this court can make any order it considers appropriate when, *inter alia,* a company or any director, officer, or shareholder contravenes or is about to contravene the *Act* or the articles, include restraining contravening conduct:

**Compliance or restraining orders**

228    (1) In this section, "complainant" means, in relation to a company referred to in subsection (2), a shareholder of the company or any other person whom the court considers to be an appropriate person to make an application under this section.

(2) If a company or any director, officer, shareholder, employee … contravenes or is about to contravene a provision of this Act or the regulations or of the memorandum, notice of articles or articles of the company, a complainant may, in addition to any other rights that that person might have, apply to the court for an order that the person who has contravened or is about to contravene the provision comply with or refrain from contravening the provision.

(3) On an application under this section, the court may make any order it considers appropriate, including an order

(a) directing a person referred to in subsection (2) to comply with or to refrain from contravening a provision referred to in that subsection,

…

79.    In ***Bhuthal v. Sahsi***, 2024 BCCA 73 ¶28, the court summarized who may be an appropriate person for an application under s. 232 of the *Act* for leave to commence a derivative action:

… "an appropriate person"—an expansive term that could include someone other than a shareholder, director or officer. Indeed, there is a long line of authority, helpfully reviewed by Kelleher J. in *Briere Sound Ltd. v. Briere*, 2014

{FLG-00646770;3}

22

BCSC 417 at paras. 86–96, confirming that an appropriate person can be any person with at least an indirect interest in the integrity, prosperity and continued existence of the company. …

80.    While not dealing with section s. 232 in this case, the same meaning of "appropriate person" ought to apply. The Company has a direct interest in its own integrity, prosperity, and continued existence and thus is an appropriate person to bring an application for the within relief under s. 228.

81.    In **Harwood Lumber Ltd. v. Grewal**, 2010 BCSC 1917, the plaintiff company brought an application relying in part on s. 228 of the *Act* seeking to restrain a director and officer of the company from using funds wrongfully withdrawn from the company's accounts in breach of the company's articles and the *Act*.  Justice Gaul confirmed that the court had jurisdiction under, *inter alia,* s. 228 of the *Act* to grant the plaintiff an injunction against Mr. Grewal relating to the funds at issue:

> [31]    Under s. 228 of the *BCA*, the Court has jurisdiction to make any order it considers appropriate where there has been a contravention of the company's articles or the *BCA* itself.
>
> [32]    The object of s. 228 is remedial in nature and the provisions should be interpreted in a broad and liberal manner: *D&G Developments Ltd. v. Crystal Cove Beach Resorts Inc.*, 2006 BCSC 1432, at paras. 35 and 37.
>
> [33]    The restraining of Mr. Grewal's use of the funds can be achieved either through a *Mareva* injunction under s. 39 of the *Law and Equity Act* or through the use of s. 228 of the *BCA*.  In either case, the Court must balance the impact of such an order on Mr. Grewal and his ability to maintain his own personal finances and the need to preserve the funds which form the root of the dispute.

82.    Under s. 230 of the *Act*, on the application by a company, the court can order a "correction" of basic records, including its register of directors:

> **Applications to court to correct records**
>
> 230 (1) In this section, "basic records" means, in relation to a company,
>
>    …
>
>    (e) its register of directors,
>
>    …
>
> (2) If information, other than information in respect of which a court application may be made under section 129, is alleged to be or to have been wrongly entered or retained in, or wrongly deleted or omitted from, a company's basic records, the company, a shareholder of the company or any aggrieved person may apply to the court for an order that the basic records be corrected.

23

(3) In connection with an application under this section, the court may make any order it considers appropriate, including

> (a) an order requiring the company to correct one or more of its basic records,

> (b) an order restraining the company from calling or holding a meeting of shareholders or paying a dividend before the correction is made,

> (c) an order determining the right of a party to the application to have the party's name entered or retained in, or deleted or omitted from, basic records of the company, whether or not the issue arises between 2 or more shareholders or alleged shareholders, or between the company and any shareholders or alleged shareholders, and

> ...

83. Section 230 of the *Act* may be used to correct as well as affirm corporate records, where the position taken by a respondent is that a record is incorrect.

> ***Trident Foreshore Lands Ltd. v. Brown***, 2004 BCSC 1365 ¶30-32,43

### VI.    CONCLUSION

84. For the reasons above, pursuant to ss. 228 and 230 of the *Act,* the orders sought herein, addressing and remedying the respondents' unlawful conduct, should be granted.

85. Furthermore, the injunctions sought herein may be granted under s. 39 of the *Law and Equity Act*.

**Part 4: MATERIAL TO BE RELIED UPON**

86. Affidavit #1 of Dan Bilzerian made July 9, 2024, to be sworn.

87. Such other materials as counsel will advise and the court may permit.

Date:   July 89, 2024 _____

_____
Signature of Seva Batkin and Thomas W. Clifford
☐ petitioner ☒ lawyers for petitioners

To be completed by the court only:

Order made
☐    in the terms requested in paragraphs ……………… of Part1 of this petition
☐    with the following variations and additional terms:

24

```
......................................................................................................................................................

......................................................................................................................................................

......................................................................................................................................................

......................................................................................................................................................

......................................................................................................................................................

......................................................................................................................................................

Date:    ..................[dd/mmm/yyyy]..................      ......................................................................
                                                              Signature of ☐ Judge       ☐ Master
```

**ENDORSEMENT ON ORIGINATING PLEADING OR PETITION**
**FOR SERVICE OUTSIDE BRITISH COLUMBIA**

The Petitioner claims the right to serve this petition on the Respondents, or any one or more of them, outside British Columbia on the ground that it concerns a business carried on in British Columbia as set out in section 10(h) and (i) of the *Court Jurisdiction and Proceedings Transfer Act,* S.B.C. 2003, c. 28.

{FLG-00646770;3}